EBENEZER JONES *vs.* JAMES W. DEXTER & others.

Bristol.   Oct. 28, 1880. — Feb. 23, 1881.   ENDICOTT & FIELD, JJ., absent.

If, on the dissolution of a firm, one partner sells the partnership assets by public auction to a person who afterwards, in pursuance of a secret arrangement made with him before the sale, reconveys them to him, he will be held in equity to account to the other partner as if no sale had been made, although such partner was present at the sale, and made a bid for the assets himself.

BILL IN EQUITY, by one partner, Jones, against his copartner, Dexter, and two other persons, to settle the affairs of a partnership.

The bill alleged that the partnership, at the time of its dissolution in 1861, owned a share in the whaling barque Ocean Rover, then at sea, and in her outfits and catchings, and that in 1862, upon the voyage, the vessel and her cargo were destroyed by the insurgent cruiser Alabama, and this share was not insured; and that pursuant to a decision of the Court of Commissioners of Alabama Claims, the sum of $1564 had been paid to Dexter in respect of his and the plaintiff's share in the vessel and outfits, and the sum of $55,068 to the other two defendants in respect of her total earnings and catchings, to be by them

distributed among her owners; and praying for an injunction, an account and further relief.

After the former decision, reported 125 Mass. 469, overruling the defendant Dexter's plea that the plaintiff's interest became vested in his assignee in insolvency in 1864, the defendants filed answers. That of the defendant Dexter alleged that the partnership was dissolved in 1861; that in 1865, after the plaintiff's insolvency, Dexter, in order to close up all the outstanding accounts of the firm, as the solvent partner, advertised for sale by auction all the remaining assets of the firm, consisting of the interest of the firm in the barque Ocean Rover, and all other notes and accounts; that the plaintiff and his assignee were present at the sale, and the plaintiff made a bid for said interest in the Ocean Rover, and that the same was struck off to one LeBaron as the highest bidder; "that subsequently, at the request of said defendant, who had previously requested said LeBaron to bid on said interest at said sale, the said LeBaron agreed to transfer said interest to the said defendant, at the price at which it had been knocked off to him;" and that transfers of said interest were made by the firm to LeBaron, and by him to the defendant.

The other defendants filed an answer, admitting the receipt of the sum alleged in the bill, and averring their readiness to pay it over to such person as the court should direct.

The case was then submitted to the court on agreed facts, and evidence, which so far as they bore upon the question whether the defendant Dexter was entitled to the whole of the fund, or whether the plaintiff was entitled to one half thereof, were as follows:

It was agreed that, in July 1865, Dexter, as solvent partner of the firm, but without notice to or consent of Jones or his assignee, except as hereinafter appears, in order to close up all outstanding accounts of the firm, advertised for sale by auction all the assets remaining of the firm, employed an auctioneer, and caused a sale to take place on or about July 20, 1865; that the sale was advertised by written notices posted in several places in Mattapoisett, the residence of the partners, stating the time and place at which would be sold the remaining assets of the firm of Jones & Dexter, consisting of their interest in the barque Ocean

Rover, its outfits and catchings, and all other outstanding notes and accounts.

Dexter's evidence was, that the firm's interest in the vessel, outfits and catching was sold to LeBaron, and was repurchased by himself. On cross-examination, in answer to the question, " Before the sale was made, was not an arrangement made with LeBaron that he should purchase this interest for you ? " he testified, " I think there was," and, on the direct resumed, testified, when asked what took place between him and LeBaron, before the sale : " As near as I can recollect, I said to him that I wanted him to bid off the interest if it did not go too high. I can't recollect the exact conversation." In answer to the question what took place on the repurchase, he testified : " I merely said to LeBaron, that I did not want to lose my interest in that ship for $12, and that, if he was willing, I would take the ship back. He said I might have it, as he did not consider it worth anything."

LeBaron, in answer to the question under what circumstances the assignment to him was made, testified, " The interest of Jones & Dexter was sold at auction, and at Dexter's request I bid it off, and he then gave me an assignment of it. Dexter afterwards took it off my hands at the same price I paid for it."

It was further agreed that neither the plaintiff nor his assignee knew of any arrangement, at the time of the sale, between Dexter and LeBaron ; that LeBaron bid $12 at the sale, but paid nothing, and never considered the interest of the firm in the vessel as worth anything ; that the transfer to LeBaron and that from him were written on or about September 11, 1865, and the first one was dated July 20, 1865, and signed by Dexter with the firm name.

If, on these facts and evidence, the plaintiff was entitled to share in the sums received from the Court of Commissioners, judgment was to be entered for him in a certain sum ; otherwise, for the defendants. *Morton*, J. ordered a decree to be entered for the plaintiff; and Dexter appealed to the full court.

*T. M. Stetson & L. L. Holmes*, for the plaintiff.

*C. W. Clifford*, for the defendant Dexter.

SOULE, J. The general rule is familiar, that a trustee will not be permitted to make a profit out of the trust property; and that

if he purchases it, even at a public auction, he will hold it for the benefit of the *cestui que trust*, and, if any profit is made upon it, he must account for it as trustee. Perry on Trusts, § 427. This rule applies to cases where one deals with property as agent for another, and to all those cases in which confidence is reposed, and one has it in his power, in a secret manner, for his own advantage to sacrifice the interests which have been entrusted to him. Story Eq. Jur. § 323. In all such cases, the *cestui que trust* has his election to avoid the transaction which was intended to benefit the trustee, and to treat the subject matter of the trust as if no change had been made in its situation, so long as the trustee has not disposed of the property to a *bona fide* holder for value. *Wyman* v. *Hooper*, 2 Gray, 141.

The application of this principle to the case at bar is plain. The defendant Dexter was acting for himself and his former partner, and the assignee in bankruptcy of his partner, in closing up the affairs of the partnership. When he undertook to sell the interest of the partnership in the Ocean Rover and its outfits and catchings, he had no right, as against the other parties in interest, to make a secret arrangement by which a stranger should purchase the interest for him. And when the purchase was made in accordance with that secret arrangement, and the interest, after being conveyed to the purchaser, was conveyed by him to Dexter in pursuance of the secret arrangement, Dexter held it for the benefit of the partnership, and not for his personal benefit.

We have assumed, in what we have said, that such secret arrangement was made and acted on, because we are of opinion that the agreed facts and evidence call for a finding to that effect. Such finding is a sufficient foundation for a decree against the defendants.

It has already been decided that, inasmuch as the debts which the plaintiff owed when he went into insolvency have been paid, and his assignee in insolvency disclaims all interest in the subject matter of the suit, and assents to the maintenance of the bill, the plaintiff, if any one, is entitled to the relief asked for. *Jones* v. *Dexter*, 125 Mass. 469. The result is, that the decree appealed from must be *Affirmed.*