### Sarah R. Freeman, administratrix, *vs.* Benjamin S. Freeman.

Bristol. Oct. 24, 1883. — Jan. 29, 1884. Field & W. Allen, JJ., absent.

A bill in equity may be maintained by the administrator of a deceased partner against the surviving partner, for a sale of letters patent belonging to the partnership, and for an account of the profits received by the surviving partner from the use of the patent since the dissolution of the partnership.

Bill in equity to settle the affairs of a partnership not already adjusted between the parties, including letters patent and other personal property, and for an account. The allegations of the answer, so far as material to the point decided, appear in the opinion.

The case was referred to a master, who found the following facts:

The plaintiff is the administratrix of the estate of her husband, Joseph J. Freeman, who died on October 6, 1878. At the time of his death, and for many years prior thereto, he carried on the business of manufacturing jewelry in Attleborough, in partnership with his brother, the defendant, under the name and style of Freeman and Company, of which firm the defendant is the sole surviving partner.

During the existence of the partnership, and prior to January, 1873, Joseph J. Freeman invented an " improvement in links for ornamental chains," for which he applied for letters patent. Pending said application, on January 25, 1873, he assigned all his right, title and interest in and to the invention to said Freeman and Company, to whom letters patent were issued on March 11, 1873.

Subsequently to March 11, 1873, the firm used the patented invention, and, as a portion of their business, manufactured goods thereunder and sold the same. By agreement between the plaintiff and the defendant, the business of the firm was carried on after the death of Joseph J. Freeman up to January 1, 1879, when all copartnership relations between the parties ceased, and the defendant purchased all the right and interest formerly of the intestate in and to the business of the firm, and all property, real and personal, used in that business, except said letters patent, the outstanding accounts, notes and bills receivable, and certain articles of personal property, which it is unnecessary to enumerate. All the finished business of the firm, and the profits and income thereof, including the goods manufactured under the letters patent, except said accounts and notes and bills receivable, were adjusted between the parties and settled to January 1, 1879; and there are no debts now due from the firm to any person.

Since January 1, 1879, the defendant has continued to carry on the business of manufacturing jewelry, and admits that he has made use of said patented invention to some extent since that date, and has manufactured more or less goods covered by the letters patent and sold the same; but he denies that the letters patent were an asset of the firm of Freeman and Company;

and contends that he owns one undivided moiety thereof, and the plaintiff the other moiety thereof, as tenants in common, and that he does not own the whole as surviving partner; and declines to disclose how many goods he has manufactured under the letters patent since January 1, 1879, or what profits and income, if any, he has received therefrom; and contends that he should not be held to account to the plaintiff for such use of the invention, or to account with or pay over to the plaintiff any profits which may have accrued to him by such use.

On January 1, 1879, and as many as three times before that date, the plaintiff, by her authorized agent, requested the defendant to dispose of the letters patent · by public auction, or otherwise, for the benefit of the firm, or to purchase the interest of the plaintiff therein at a reasonable price; but this the defendant declined to do. A few days after said January 1, the plaintiff, by her agent, forbade the defendant to use the letters patent in his business, and notified him that, in case he did so use them, she should hold him responsible for one half of the profits derived from such use.

On January 1, 1879, there was due and owing to said firm a considerable amount of bills and notes, and, at the date of the hearing, the defendant had collected the sum of $3397.75, which amount he now has in his hands, one half subject to the plaintiff's order. There were also some claims due from the firm which have since been paid by the defendant.

The plaintiff offered evidence tending to show the amount of chain manufactured under the letters patent and sold by the defendant since January 1, 1879, and of the amount of profits derived from the business; but, upon the defendant's objection, the master excluded the evidence, and ruled that the plaintiff was not entitled to recover any part of the profits derived from such business.

The plaintiff filed an exception to the ruling of the master excluding the evidence offered.

Hearing before *Field*, J., who reserved the case for the consideration of the full court, such decree to be entered as justice might require.

*H. J. Fuller*, for the plaintiff.

*C. R. Train & J. E. Maynadier*, for the defendant.

C. ALLEN, J. Letters patent belonging to a firm are to be dealt with, on a dissolution of the firm, like other partnership property. If used by a surviving partner for the purpose of profit, he will be held to an account, as in other cases of using assets of the firm; and if a sale is necessary for the purpose of winding up the affairs of the firm, such sale will be ordered by the court, if not made voluntarily. The case of *Mathers* v. *Green*, L. R. 1 Ch. 29, cited by the defendant, implies nothing to the contrary of this doctrine, and has no reference whatever to the case of a partnership. It only holds that, where two or more persons jointly obtain letters patent, there is no implied contract that no one of them shall use the invention without the consent of the others, or, if he does, that he shall use the same for their joint benefit. This also was the doctrine of *Vose* v. *Singer*, 4 Allen, 226. But a contract of partnership implies an agreement that all the assets of the firm shall be used for the common benefit of all the partners; and this implied agreement includes letters patent as well as other kinds of property; and supersedes the relation which the parties would otherwise sustain towards each other merely as joint owners. A surviving partner is bound by this implied agreement; and it is his duty to use, manage, or dispose of letters patent, as well as all other property of the firm, after its dissolution, for the common benefit of himself and the estate of the deceased partner. *Crawshay* v. *Collins*, 2 Russ. 325. *Willett* v. *Blanford*, 1 Hare, 253. *Wedderburn* v. *Wedderburn*, 22 Beav. 84, 112.

This duty of sale is not limited to a disposition of so much of the partnership property as is required to pay debts. The surviving partner is bound to wind up the partnership, and ordinarily to make sale of all the personal assets, and not only to pay the debts of the firm, but to distribute to the representatives of the deceased partner the share to which they may be entitled. This duty of the surviving partner may not be strictly that of a trustee, but it is analogous; and he is not allowed to derive a distinct and independent personal advantage, either directly or indirectly, from the use of the partnership assets, but he must manage and dispose of them with a single eye to the advantage of the partnership estate which he is to administer. This rule is universal in its application to fiduciary relations. *Bowen* v. *Richardson*,

133 Mass. 293. It extends also to the duty of a surviving part-
ner, and he is bound to act in perfect fairness and good faith,
according to the highest standard of honor, and with reasonable
care and diligence, with reference to the decedent's interest.
That which was partnership property before the dissolution
continues to be so afterwards; and a sale of the whole personal
property will ordinarily be enforced by a court of equity, and an
account ordered of profits made since the dissolution. The sur-
viving partner is not allowed to divide this property *in specie*,
or to take it himself at a valuation, or to have its value ascer-
tained otherwise than by a sale; but he must turn all the assets
into an available and distributable form, so far as this can be
done. Lindley on Part. (4th ed.) 569, 666, 1015, 1016, 1041,
1046. Story on Part. (7th ed.) §§ 328, 344, 347, 350, 355.
2 Colly. Part. (6th ed.) §§ 623, 624. Lewin on Trusts (7th ed.)
255. *Bush* v. *Clark*, 127 Mass. 111. *Dunlap* v. *Watson*, 124
Mass. 305, 307. *Shearer* v. *Shearer*, 98 Mass. 107, 114. *Moore*
v. *Huntington*, 17 Wall. 417, 424. *Case* v. *Abeel*, 1 Paige, 393,
398. *Evans* v. *Evans*, 9 Paige, 178. *Heath* v. *Waters*, 40 Mich.
457, 464. *Barry* v. *Briggs*, 22 Mich. 201, 206. *Stevens* v. *Stevens*,
39 Conn. 474. *Wedderburn* v. *Wedderburn*, 2 Keen, 722; 4 Myl.
& Cr. 41; 22 Beav. 84, 100, 101, 103, 112.

The defendant was not relieved from this duty by his pur-
chase of the bulk of the other property of the firm, for the plain
reason that by that sale and purchase it was not the intention or
understanding of either party to the transaction that a right to
use the letters patent for his own benefit was thereby vested in
him. It appears by the master's report, that the plaintiff re-
peatedly requested the defendant, before, at the time of, and
after this purchase, to dispose of the letters patent for the bene-
fit of the firm; and the defendant, in his answer and amended
answer, not only made no claim to have acquired any right in
the letters patent by the purchase of the other property, but
stated expressly that whatever use he had made thereof had
been exercised by virtue of his title as tenant in common with
the plaintiff.

A somewhat technical argument has been addressed to us, to
the effect that a patent is merely a grant of the privilege of ex-
cluding others from the use of the invention; and that, by merely

manufacturing the articles covered by the patent, the defendant cannot be said to have used the patent in question at all. But we think the manufacture of goods under a patent, by one of the patentees, must be considered as a use of the patent.

The result is, that the plaintiff is entitled to maintain her bill for a sale of the letters patent, and for an account. The principle on which the accounting should be made has not been discussed, and it would be premature for us at this time to undertake to determine it. The exception. to the master's report is sustained. *Decree for the plaintiff.*