JAMES T. MOORE *vs.* DANIEL G. RAWSON & others.

Suffolk.    December 14, 1903. — March 1, 1904.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, & BRALEY, JJ.

*Partnership,* Dissolution, Good will, Accounting.

On the dissolution of a partnership the beneficial interests of the partners in the assets of the firm become several, subject only to the payment of the debts of the firm and the settlement of accounts between the partners.

If, in a suit by a retiring partner against his co-partners for an accounting, it appears, that on the termination of the partnership the defendants wrongfully appropriated to their own use the property of the partnership including the good will, they will be held to account to the plaintiff for the good will in the same way as if they had purchased it or had sold it to a stranger, regardless of the question whether the firm name could have been used without the consent in writing of one of the defendants.

If a partnership has established a business sufficiently permanent in character to include not only the patronage of its customers but the elements of locality and a distinctive name, a good will exists which forms an asset of commercial value in an accounting among partners.

If a partnership agreement provides that interest at a certain rate shall be allowed on all capital furnished by the respective partners, this does not entitle the partners to interest on such capital after dissolution before a balance has been found due and before a reasonable time for winding up the affairs of the firm has elapsed.

Where by a dissolution under the terms of a partnership agreement, which contained no provision as to winding up the business, one of the partners is forced by the other partners to retire, and the remaining partners refuse the retired partner an accounting, and, forming a new partnership, continue the business using the retired partner's share in the property and good will of the old firm as part of their working capital, the remaining partners must account to the retired partner, not only for his share of the partnership property including the good will, but also for his share in all actual profits derived from the property, or must pay him interest on his share of the capital if he so elects.   The court in its discretion may allow the remaining partners in accounting for the actual profits to deduct from the net profits such a sum as is found to be attributable solely to their skill and services in conducting the business.

BILL IN EQUITY, filed March 14, 1872, for a partnership accounting, as described in the opinion.

The history of the case is stated briefly in the opinion.   On February 20, 1903, *Barker,* J. made an interlocutory order confirming the master's report, after adding to it the following findings of fact:

"At the time of the dissolution of the firm the original defendants knew that the profits had been so large that there was due the complainant a large sum, which by the partnership articles was to be divided upon the dissolution, and which they knew ought in justice to be paid to him by them at the latest when the assets should be reduced to cash, if they assumed the privilege of making that reduction.

"The original answer must either have been an admission of that state of facts or an unwarrantable denial of what the original defendants knew to be the plaintiff's rights, and so must have been an admission of his rights in general terms.

"The defendants reduced the assets to cash by August, 1872, and might have paid off the plaintiff at that date. At the latest they should have paid him off at that date.

"There was no offer to pay any specific sum until late in the year 1873, and the offer then made was of a sum less than was due the plaintiff, although not greatly less if no allowance is to be made him for subsequent profits or for good-will.

"The omission to offer to pay any specific sum until late in the year 1873, the offer at that time of a sum less than was due, and the use of the plaintiff's money in a business carried on by the original defendants with no fresh assets, but only those which came to them from the old partnership, show a deliberate purpose to keep the plaintiff's money and to use it in their continued business for their own benefit on the part of the original defendants, and such purpose and use are found as facts in the case."

On the same day, the justice, with the consent of the parties, reserved the case for determination by the full court, upon the appeals of the plaintiff and of the defendant from the order of the justice, overruling the plaintiff's exceptions to the master's report after amending that report by adding to it the findings above quoted, and confirming it as amended, and also upon the questions of law raised and stated in the master's report, such decrees to be entered as justice and equity might require.

The substance of the master's report appears in the opinion.

The partnership agreement was as follows:

"Articles of co-partnership made and entered into this first day of January, A. D. 1870 by and between D. G. Rawson, J. T.

Moore, both of Newton in the County of Middlesex, W. B. Fay of Upton in the County of Worcester and C. S. Goddard of the City of Worcester in said County of Worcester and all within the Commonwealth of Massachusetts.

" 1st. That the undersigned parties aforesaid hereby form themselves into a co-partnership for the ensuing three years, for the purpose of the manufacture and sale of boots and shoes as hereafter set forth, under the firm name of D. G. Rawson & Co.

" 2d. The business of said firm is to be the manufacturing of boots and shoes in the City of Worcester and the selling of the same at store No. 98 Pearl Street, in the City of Boston, County of Suffolk and said Commonwealth, and is to continue for the space of three years from the 1st day of January as aforesaid.

" 3d. The parties hereto, covenant and agree to and with each other, to place into said firm's business as permanent capital the following sums of money, to wit: W. B. Fay agrees to furnish the sum therefor of Two Thousand Dollars, C. S. Goddard agrees to furnish for the same purpose the sum of Two Thousand Dollars, and D. G. Rawson and J. T. Moore agree to furnish the balance of capital aforesaid sufficient to carry on said business, interest upon all capital furnished to be allowed at the rate of eight per cent yearly.

" 4th. The profits of said firm's business are to be divided at the end and expiration of the three years, or at the determination of this co-partnership as hereinafter provided, as follows, to wit:

" D. G. Rawson is to receive of said profits at the rate of 33 1-3 per cent on the whole amount thereof, J. T. Moore is to receive of the whole profit 33 1-3 per cent thereof, and W. B. Fay and C. S. Goddard are to receive each 16 2-3 per cent each of the whole profits, as their several portions of such profits and no more.

" 5th. The parties hereto are limited hereby from drawing out from the firm's business respectively as follows:

" D. G. Rawson not exceeding any one year the sum of Two Thousand Dollars; J. T. Moore not exceeding any one year the sum of Two Thousand Dollars; W. B. Fay not exceeding any one year the sum of One Thousand Dollars; and C. S. God-

dard not exceeding any one year the sum of One Thousand Dollars.

" 6th.  No member of this partnership shall use the firm's name for his benefit, or the benefit of any other persons or firms whatsoever or corporations as endorser, signer, surety or otherwise outside of said firm's business herein set forth, without the written consent of each party constituting the firm of D. G. Rawson & Co.

" 7th.  The said Fay and Goddard are to devote their time and attention during business hours for and during this co-partnership in superintending and directing the manufacturing of boots and shoes at their place of manufacture in the City of Worcester aforesaid; and the said D. G. Rawson and J. T. Moore have the right at all times to give directions and orders as to the way and manner of carrying forward said firm's business in the manufacturing of boots and shoes under the co-partnership and aside from the aforesaid duty it is the duty of said D. G. Rawson and J. T. Moore to attend on their part to the selling of the boots and shoes manufactured and to be manufactured under those articles of co-partnership upon the most favorable prices and terms that they can secure for said firm.          -

" 8th.  Books requisite to reflect the firm's business as to the manufactures aforesaid are to be kept either at Boston or Worcester so as at all times to exhibit the amount of stock and material and the cost thereof used in such manufactures, from whom the same was purchased, and the price thereof, and when paid, or when to be paid, all property entered upon such books when received at said factory, and also requisite books shall be so kept at 98 Pearl Street which shall always exhibit the amount of stock manufactured and received from the factory at Worcester at said store and the amount of sales made thereof and the terms of such sales, and all moneys received from the sales of such goods manufactured and to be manufactured under this contract of co-partnership to be received and held by said Rawson and Moore in bank for the benefit of said firm, for and during the co-partnership and to be used only for the firm's business from time to time and within the provisions of this co-partnership and within the limits and purposes thereof, said books to be open to the inspection of all parties to this co-partnership, both in Worcester and Boston.

"9th. This firm shall be dissolved at the expiration of any year hereafter (within the three years aforesaid) by the written consent and wish of any three members of said firm by giving notice of such consent or wish in writing at such termination of any such year to each of the members hereof; in case of such a dissolution of this firm, the lease given by D. G. Rawson, of the Boot Factory at Worcester shall terminate. The stock and tools and machinery in bill or schedule marked ' A ' is and shall be taken to account by said firm as cash capital to the amount thereof as reflected therein."

[Here followed the attesting clause with the signatures and seals of the parties and the signatures of witnesses.]

*G. R. Swasey*, (*M. J. Dwyer* with him,) for the plaintiff.

*J. B. Warner*, for the defendants.

BRALEY, J. Between March 14, 1872, the time when the bill was filed and the coming in of the master's report, this case has been pending before the court for more than thirty years. Those originally connected with it, either as counsel, or appointed as masters to hear the parties on the issues to be tried, have been removed by death. A part of the pleadings have been either lost or destroyed, and the books of account of the partnership, kept at the office in Boston, and showing all its business transactions, were damaged almost to the point of destruction, by the great fire of November, 1872. The defendant, Daniel G. Rawson, the only member of the partnership who was familiar with the business of the firm and the contents of the books, became insane, and died, without ever having given his evidence in the case. And the bookkeeper, who knew of its business transactions as shown by the books of account kept by him, also died before his testimony was taken. The masters to whom from time to time the case had been referred did not live to make any report, though in one instance all the evidence had been submitted and arguments made.

In the beginning, the plaintiff asked for the usual accounting arising upon the dissolution of the partnership, but as the case proceeded, it broadened into an additional demand for actual profits received by the defendants from the use of his capital after dissolution. But no supplemental bill was filed, the defendants conceding that the plaintiff might have under the

original bill equitable relief commensurate with his claims, subject, however, to any defence that they might interpose.

On January 25, 1897, the case was again referred to a master, and his report as amended and confirmed by an interlocutory decree of February 20, 1903, together with all questions of law raised and stated, either in the report or open under the decree, have been reserved for our decision.

It is plain from this brief recital of the history of the course of litigation, that in any attempt now made to determine the questions raised, many obstacles would be found, and embarassments arise, not only by the death of witnesses, but from the absence of important evidence, which had perished, without any fault of the parties. But out of such testimony as could be found, and presented, the master has succeeded in making certain findings of fact, and in stating the rights of the parties, in a full and clear report. Though the plaintiff took a very large number of exceptions, it does not become necessary to take them up in detail, as they may be grouped, and considered under the classification presented in the report and at the argument.

Before considering them, it becomes necessary to ascertain the plaintiff's legal standing, and his right to demand and receive an accounting from the defendants.

The contract of partnership signed by the parties, dated January 1, 1870, was formed " for the purpose of the manufacture and sale of boots and shoes," and among other stipulations provided that " this firm shall be dissolved at the expiration of any year hereafter (within the term of three years aforesaid) by the written consent and wish of any three members of said firm by giving notice of such consent or wish in writing at such termination of any such year to each of the members hereof."

Dissatisfaction over the conduct of the business by the plaintiff appears to have arisen between him and Daniel G. Rawson, and after a dispute over the affairs of the firm, on December 20, 1871, notice was given to the plaintiff by his partners, Daniel G. Rawson, W. B. Fay and C. S. Goddard, of their intention to terminate the partnership at the expiration of the year 1871, as provided in the agreement.

The master finds, and reports, that under ordinary conditions the dissolution took place, and the account should be stated, as

at the close of business December 31, 1871, " but the destruction of the chief books of account by fire, the death of parties and witnesses . . . make it impossible to state an accurate account as of December 31, 1871. The master has endeavored, therefore, to state the account as of December 20, 1871. This was the date of the firm's annual stock taking." No exception is taken to this ruling, and it must be treated as having been accepted by the parties.

Upon all the evidence before him, the master finds, and reports, that at that time the amount due the plaintiff, exclusive of good will, upon a winding up and settlement of the affairs of the firm, was $13,529.58. As the defendants took no exceptions to the report, this finding must be considered acceptable to them, and of this sum they paid into court for the use of the plaintiff December 27, 1873, the amount of $12,843.63.

It is the contention of the plaintiff that this sum should be increased by the value of his interest in the good will of the business, and also by the addition of profits which accrued subsequently on his share of the assets in their use by the defendants.

Before the formation of the partnership, the defendant, Daniel G. Rawson, was a manufacturer of boots and shoes, and carried on business under the name of " D. G. Rawson & Co.," with a factory at Worcester and an office in Boston. In the articles of partnership it was stipulated that the place of business, as well as the name and style of the firm, should be the same, and by force of the agreement, if there was any property in the trade name, it passed to the firm without being distinctly enumerated. *Sohier* v. *Johnson*, 111 Mass. 238, 242. *Whitcomb* v. *Converse*, 119 Mass. 38, 43. *Boon* v. *Moss*, 70 N. Y. 470, 473.

After the dissolution by the enforced withdrawal of Moore, no change was made, but the defendants continued the business as before, until December 31, 1872, when a new partnership was formed, consisting of four persons ; three of whom were the retiring partners of the old firm and the defendants in this case. No change, however, was then made either in the firm name, which continued to be that of " D. G. Rawson & Co.," or in the place where the business was located, and the defendants took over the assets of the old firm, not for the purpose of liqui-

dation, but for use in their business. And the customers who had patronized the first, continued to trade with them and the second partnership.

The plaintiff retired, not only from the firm, but also from the business that it carried on, while the defendants retained the old place of business, and conducted it under the old firm name.

In other words, no change apparent or real was made in an enterprise which was transferred bodily from the old partnership to the new, except that one partner was obliged to retire under the terms of the old contract, and after a short period, by a new agreement, another was taken in his place.

The attitude of the defendants up to the time of the payment of the money into court was evidently that of a general denial of any right of the plaintiff to an accounting.

Their conduct and motives in dissolving the firm are stated in their second answer, in the words, "and they did so by reason of the incapacity, inattention and inefficiency of the plaintiff in the affairs of the firm, and these defendants found it necessary for the safety and interests of the firm to close the partnership."

No evidence was introduced to support this allegation, and the master reports, that "up to the time of dissolution the plaintiff had devoted himself faithfully to the business of the firm," and during its existence he had sold substantially "eighty-five per cent" of all goods made by it, and "had a very substantial influence in building up the established list of customers."

A trading partnership that had apparently achieved this large measure of success in its business, an appreciable part of which was due to the skill and ability of the plaintiff, might have a good will that upon dissolution would form a valuable part of its assets; and the plaintiff now contends that such good will existed, and that his interest therein is to be valued and added to his share of the assets already found.

When he demanded that his share in the assets of the firm should be paid over, it was not necessary for him to specify the various items that made up the property of the partnership in which he claimed his rights as a partner, in order to save himself from the possible defence of having waived any claim that there was a good will to the business.

At the dissolution the interest of the partners in the assets of the firm became several, and subject only to the payment of the debts of the partnership, and a proper settlement of the accounts between them. *Yale* v. *Eames*, 1 Met. 486, 487. *Sanborn* v. *Royce*, 132 Mass. 594, 595. *Pratt* v. *McGuinness*, 173 Mass. 170. *Bank* v. *Carrollton Railroad*, 11 Wall. 624.

The general demand made by him was sufficient and broad enough to include its entire property. He was not asked to give a particular enumeration of the various items comprising it, but the attitude of the defendants towards him is well stated in the words of Daniel G. Rawson, who at the interview in which the demand was made " denied that there was anything of value to which the plaintiff had any right." *Hoxie* v. *Chaney*, 143 Mass. 592, 594.

If the defendants had wound up and adjusted the affairs of the partnership by a sale of all of the property, and for the accomplishment of this result they had sold the business as a whole and as designated by the firm name, the good will would have passed, and they must have accounted to the plaintiff for its value. *Musselman's appeal*, 62 Penn. St. 81. *Boon* v. *Moss*, 70 N. Y. 470.

It is strongly argued by the defendants that the good will cannot be found to have any salable value, and it was not an asset, since the purchaser could not have used the firm name without the consent in writing of Daniel G. Rawson. Gen. Sts. c. 56, § 3. *Lodge* v. *Weld*, 139 Mass. 499. But no such question arises in this case, for by their conduct in forcibly and wrongfully appropriating to their own use the property of which the good will was a part, they have put themselves in a situation similar to that which would have arisen on a sale of it, either to themselves or by them to a stranger. *Jones* v. *Dexter*, 130 Mass. 380. *Mellersh* v. *Keen*, 27 Beav. 236 ; *S. C.* 28 Beav. 453. See *Burchell* v. *Wilde*, [1900] 1 Ch. 551.

It is not possible, on the facts of this case, to direct the master to put up and sell by auction the good will, and it does not become necessary to consider whether the plaintiff at any time could have had its value determined in this way. *Hutchinson* v. *Nay*, 183 Mass. 355.

While no rule can be laid down by which the good will of a

trading partnership in all cases can be ascertained and its value fixed with mathematical precision and accuracy, yet if it be assumed that a firm has been in existence for a time long enough to establish a business sufficiently permanent in character to include not only its customers but the incidents of locality and a distinctive name, these advantages constitute a going business enterprise; and it may then be said that the name and what is done under it go together; and a good will exists which forms an asset of commercial value in a winding up between partners.

The fact that such an asset may be difficult of appraisement is no legal reason for denying to the retiring partner an appraisal, if it be proved that he is entitled to it. *McMurtrie* v. *Guiler*, 183 Mass. 451, 454, and cases cited.

And there seems in this case to have been at least sufficient evidence before the master from which he could find and determine not only the fact of its existence, but also the amount to be allowed to the plaintiff for his share in the good will of the firm of " D. G. Rawson & Co." at the date of dissolution.

The length of time the firm had been in existence, the nature and character of its business, the fact whether it had been successful or unsuccessful, the average amount of net profits, the probability of the continuance of the business under the same name without competition in any form from a retiring partner, are some of the elements that may enter into such an inquiry.

As the trial proceeded before the different masters, at some stage of the proceedings it appeared that the defendants had used the share of the plaintiff, including not only the first amount found by the master, but that amount increased by the value of his interest in the good will in their business, and under the stipulation which was treated by the parties as a substitute for a supplemental bill, he now contends that this share is to be increased by actual profits, and added to the sums already ascertained in finding the total amount that is due to him.

From the date of dissolution, January 1, 1872, to December 27, 1873, the share of the plaintiff in the assets of the firm which had been dissolved was used by the defendants in their business; and it makes no difference in this case, in the measure of their accountability to him, whether this period of time is divided into the part in which they continued the business between them-

selves and that after the new partnership was formed, for during the entire time they used his share as a portion of their working capital.

The conduct of the defendants, and the use by them of the plaintiff's property, placed them in a fiduciary relation to him, in the care and management of his share, until they had fully wound up and settled its affairs. *Jones* v. *Dexter*, 130 Mass. 380. *Knox* v. *Gye*, L. R. 5 H. L. 656.

They were called upon to act fairly and in good faith, and to use reasonable diligence in seeing that his interests were fully protected; and if they chose to use his property without his consent, they must strictly account for any and all actual profits received by them from such use. *Dunlap* v. *Watson*, 124 Mass. 305, 307. *Freeman* v. *Freeman*, 136 Mass. 260, 264.

The rule has sometimes been stated, that owing to the great difficulty which may arise in determining the amount of subsequent profits, and stating the account between those who are entitled to share them, liquidating or surviving partners who continue to use the capital of a retiring or deceased partner ought not to be held liable for profits on capital used, except in cases of gross fraud or breach of trust. See *Phillips* v. *Reeder*, 3 C. E. Green, 95.

But it was said by this court in *Robinson* v. *Simmons*, 146 Mass. 167, 175, that "as a general rule, where a surviving partner continues to use the capital of a deceased partner in the business, the representatives of the latter, in the absence of any agreement to the contrary, have the election to demand either interest on the capital used or the profits earned by its use, the latter being accretions to the fund owned by them. There is, however, no inflexible rule governing all cases, but each case depends upon its own circumstances and equities."

Though this language was used with reference to the right of the representatives of a deceased partner to such an accounting, no sufficient reason appears why it does not apply equally to a case where the dissolution is not caused by death, but takes place under the terms of the articles of partnership.

When the plaintiff demanded an accounting, and that his share of the assets should be ascertained and paid to him, the demand was met with a denial of such a right, and a refusal to

grant his request. He was obliged to resort to a bill in equity to compel the defendants to do what by implication under their contract, which contained no provisions for a settlement of the partnership on its termination, they had agreed to perform upon a dissolution of the firm at their option ; and after which, with the plaintiff's assent, they became bound within a reasonable time to wind up and settle the affairs of the partnership, and pay him his proportionate part.

No pretence was made by them that in good faith they had taken the partnership property at a fair valuation, and were ready to state the account on that basis, but they refused to pay anything, absolutely ignored him, and treated the property as their own. For this reason the case does not fall within the decision made in *Denholm* v. *McKay*, 148 Mass. 434, relied on by the defendants.

From the facts found by the master, the defendants must have known that the profits of the business had been large, and that the plaintiff was entitled to one third of them under the partnership articles upon dissolution ; or, at the latest, after a reasonable time had elapsed in which to reduce the assets to cash, if they assumed to act as partners in liquidation.

Apparently, they could have paid the plaintiff as early as August 31, 1872, but they made no offer of any specific sum until the payment into court, and then the amount offered was less than that actually found to be due to him.

Upon the dissolution of a partnership, in the absence of any agreement permitting him to charge for his services, the partner who winds up the business and disposes of the assets ordinarily is not allowed compensation. What he does is as much for his own benefit as for that of the retiring or the estate of a deceased partner; and it may be said that this is one of the burdens which may arise, and is deemed incidental to the contract. If, however, the continuation of the business is consented to by those entitled to an account, then he is to be compensated for any extra services. *Schenkl* v. *Dana*, 118 Mass. 236.

While it must be held under the facts disclosed in this case that there was no such assent by the plaintiff to the use of his money as will bring it within the line of decisions, where upon dissolution the liquidating or surviving partner continues the

business, and by consent uses the share of the retiring or deceased partner, and the situation of the defendants thus becomes analogous to that of trustees in their own wrong, yet the plaintiff cannot have compensation both by way of profits actually earned by his money, and at the same time interest on his capital. *Robinson* v. *Simmons, ubi supra. Levi* v. *Karrick,* 13 Iowa, 344.

When the contract of partnership terminated, he was then to have his share as it stood at dissolution ; but if without his consent the defendants used his capital, they must at his election give to him what, if anything, it had earned, or allow interest for its use. If any depreciation in the value of the assets taken over by them is found during the short period covered by the accounting, such decrease may be allowed so far as it can properly be considered in finding the amount of net profits. It is obvious that what would be just in one case might not be in another.

He must now take one of two positions, either that the defendants in their relation to him had been guilty of bad faith and a breach of their trust, and must account not only for the principal, but for all profits received by them by the wrongful use of his money, which is the measure of their liability, or he must be content with accepting interest in full satisfaction for the use of his principal. *Robinson* v. *Simmons, ubi supra.*

The use by the defendants of the property of the plaintiff after August 31, 1872, which is the date found by the master when the share of the partners in the assets of the partnership could have been liquidated and paid, was unauthorized. But whether under such conditions they should be allowed anything for their skill and services is within the discretion and control of the court, and does not rest on any contract made by the parties. *Robinson* v. *Simmons, ubi -supra. Turnbull* v. *Pomeroy,* 140 Mass. 117. *Thayer* v. *Badger,* 171 Mass. 279, 280.

It does not appear that the nature of the business presented any extraordinary difficulties, or called for more than ordinary business skill or ability, though as a result of its continuance large profits appear to have been realized. The defendants apparently kept in successful operation the business enterprise of which they had taken possession at the dissolution of the firm.

And to this extent it may be found that the subsequent profits can be said to be due to their efforts.

In finding the net profits, the master has allowed eight per cent by way of interest on capital and profits invested as capital by the defendants, but he does not state whether he finds that the sums which each of them would thus receive should be treated as equivalent to that part of the net profits due to their skill and services. If so, the balance remaining would not be subject to any further reduction, but should be considered as the actual earnings of the whole capital invested, including the amount due to the plaintiff.

It may be assumed that the master regarded the contract of partnership as still controlling the rights of the parties ; but if interest at the date of dissolution should be allowed on the original capital invested, after dissolution, interest ought not to be charged until the balance has been found on a settlement between the parties, and a reasonable time has passed in which to wind up the affairs of the firm. *Crabtree* v. *Randall,* 133 Mass. 552. *Bradley* v. *Brigham,* 137 Mass. 545, 546.

If, however, the defendants were entitled to be further allowed such part of the net profits, as the master upon the evidence before him might find to be just and equitable, then in order to give the plaintiff equality of participation, interest at the same rate for like periods of time after August 31, 1872, would have to be reckoned not only upon his principal, but also upon that principal as augmented for each period by his share of the actual profits when found.

In order to avoid what might become a long and complex, if not impossible, statement of the accounts, the same result is substantially reached, and the plaintiff may have the net profits stand, without diminution by any credit of interest on the total capital and profits which have been invested in the business. From the net profits so stated, such a sum is to be deducted as the master finds is solely attributable to the skill and services of the defendants, and the balance is to be treated as actual profits, in which the whole capital invested is entitled to share equally. This method of determining the share of each of the parties interested allows to the defendants the amount actually earned by their capital ; and if it be said they lose interest, the reply is,

not only that the original contract is not to control, which provided for interest at the rate of eight per cent on the capital invested during the life of the partnership, but the plaintiff also gets no interest upon his share, which they have used against his will and in their own wrong. *Dunlap* v. *Watson*, 124 Mass. 305. An allowance to them of so much of the net profits as may be found due to their skill and ability is all that they are equitably entitled to receive.

The plaintiff, therefore, after August 31, 1872, is to be allowed such proportion of the actual profits as his amount of capital bears to the whole capital invested. *Freeman* v. *Freeman*, 142 Mass. 98, 106. *Dunlap* v. *Watson, ubi supra*. *Hartman* v. *Woehr*, 3 C. E. Green, 383, 386. *Featherstonhaugh* v. *Fenwick*, 17 Ves. 298.

The result to which we have come may be stated as follows: the sum of $13,529.58 is to be treated as a constant factor in the problem of ascertaining the final amount due to the plaintiff; there is to be added to it the value of his interest in the good will of the firm at the date of dissolution, and the total amount represents his share in the assets of the partnership. This amount is to be further increased by the plaintiff's part of the actual profits accruing to him from the use of his money or share after August 31, 1872, and up to December 27, 1873. From the principal so found the partial payment of $12,843.63 is to be deducted, and on the new principal interest is to be computed at the rate of six per cent from December 27, 1873, to the date of the entry of the final decree.

The case must be recommitted to the master to make the necessary computations and findings, and state the result in a final report.

*Decree for the plaintiff accordingly.*