WILLIAM B. ARNOLD *vs.* GEORGE H. MAXWELL & another.

Suffolk.   November 8, 9, 1915. — January 17, 1916.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Partnership. Corporation. Equity Jurisdiction,* Accounting between partners.

The relations of partners as between themselves are not changed by the adoption
    of the instrumentality and name of a corporation in carrying on their business.
    It is the duty of a partner to disclose to his copartner any bargains affecting their

joint interest entered into by him with third parties for his own benefit and all matters of business within the scope of the partnership agreement of which his copartner is ignorant and has not the means of information.

Where upon a settlement between two partners, one a business man who had had "charge of the business management" and the other a lawyer who had agreed to "manage the legal end of the enterprise and advise with" his partner, "both parties working without remuneration" and having agreed to "share equally in all respects, both as to ownership, profits and expenses," the lawyer partner had "purposely refrained" from bringing to the business partner's attention certain charges for legal services which he had been paid, and also had failed to inform his partner of his acquisition of certain additional shares in a corporation that they had formed for carrying on the partnership business that he had acquired without his partner's knowledge and on which he had received dividends, it was *held,* that the business partner, who first received information in regard to these matters four years after the settlement, might maintain a bill in equity against the lawyer partner for an accounting.

In the suit in equity named above, where it appeared that, owing to the settlement having been fully executed and the subsequent lapse of time, the parties could not be restored to the position they were in when the settlement was made, it was *held,* that the defendant was chargeable in a partnership accounting on the basis of the agreement of equality as of the date of the settlement both for the payments made to him for legal services and for the value of the additional shares of stock secretly acquired by him.

BRALEY, J.   The defendant Maxwell, to whom we shall hereafter refer as the defendant, having waived his exceptions to the master's report and his appeal from the order of the single justice * declining to recommit, the question for decision is whether upon the master's findings the bill can be maintained.

"It is an elementary rule of equity pleading, that the bill must contain a clear and exact statement of all the material facts upon which the plaintiff's right to the relief sought depends, and that he can only introduce evidence of such facts as are thus stated." *Drew* v. *Beard,* 107 Mass. 64, 73.   The bill plainly violates this rule.   It is so enswathed in verbiage that it is difficult to ascertain precisely the grounds on which rescission of the final settlement, and the setting aside of the release which the plaintiff gave the defendant, is asked.   But, as the defendant did not except to the master's report, the master's interpretation and generalization may be adopted, that in violation of an agreement between them the defendant formed and executed a plan to acquire control of the enterprise, and to "force out the plaintiff," and that the final

---

* *Braley,* J., who at the request of the parties reserved the case for determination by the full court.

settlement was the consummation of the plan; that fiduciary relations existed between them, and that the defendant violated the duties imposed by these relations by certain acts, as well as by his failure to disclose certain acts, and that either the settlement as a whole or at least in part was induced by this breach of duty.   Or more briefly, the plaintiff's alleged cause of action arises from nondisclosure where the duty of disclosure as to the transactions impeached rested on the defendant.   We pass over their previous acquaintance and negotiations which culminated in the agreement under seal of June 30, 1905, referred to by the master and counsel as the "equality agreement."   In substance this provides, that the parties "have agreed and do hereby agree that in the Filler Business, * upon which we are about to enter, and in all matters which now and hereafter may be connected therewith, we shall share equally in all respects, both as to ownership, profits and expenses; and, as soon as it shall be expedient, the said Maxwell shall organize the North American Chemical Company to take over said business.   Said Maxwell shall manage the legal end of the enterprise and advise with the said Arnold as to business management, and the said Arnold shall have charge of the business management, both parties working without remuneration."   The agreement undoubtedly created a partnership and stated the basis on which they should participate and hold stock in the corporation subsequently organized "to take over said business," and to which the assets were transferred, but at what date is not specifically shown. It is immaterial as between themselves whether they conducted the business under a firm name, or adopted the instrumentality and name of a corporation.   The parties acted upon this understanding of mutual interest and ownership, for each finally received of the capital stock four hundred and fifty shares while the balance remained in the treasury.   *McMurtrie* v. *Guiler*, 183 Mass. 451.   *Ginn* v. *Almy*, 212 Mass. 486.   *Crompton* v. *Williams*, 216 Mass. 184, 186, 187.   *C. H. Batchelder, Inc.* v. *Batchelder*, 220 Mass. 42.

The duty accordingly devolved on each to disclose to the other any bargains affecting their joint interest entered into with third parties for his own benefit, or any matters of business within the

---

* The making of a filler used in the manufacture of shoes to fill the space between the inner sole and the outer sole.

scope of the agreement and mutual understanding, of which the other, not having means of information, was ignorant. *Drew* v. *Beard,* 107 Mass. 64, 72, 73. *Jones* v. *Dexter,* 130 Mass. 380, 383. *Moore* v. *Rawson,* 185 Mass. 264, 274. *Hawkes* v. *Lackey,* 207 Mass. 424, 432, 433. The enterprise after some experimentation proved very successful financially, but the master finds that the business relations of the partners were never wholly harmonious. The plaintiff was a man of good ability and of much business experience, while the defendant was a member of the bar whose professional practice had been very largely that of a trademark and patent solicitor. It was because of his employment by the inventor of the filler that he became interested and urged the plaintiff to join with him in acquiring the patent and entering upon its manufacture. The master, after recapitulating the substance of the material evidence, finds in his conclusions: that the defendant shortly after the enterprise began to develop conceived the purpose of getting control of the corporation and the business, although he did not at any time design to cheat the plaintiff, who during all the transactions to which reference will be made was a director and apparently vice president. The strain and friction did not lessen for reasons fully detailed by the master, and finally in something like three years after the agreement the parties entered into negotiations which led to a sale by the defendant to the plaintiff of his capital stock and of all interest in the assets of the company, after the plaintiff had been informed by the defendant that he owned nine hundred and seventy-four shares which would be transferred. But, the terms having been settled and the agreement substantially performed, the plaintiff consulted counsel, and acting upon their advice induced the defendant to rescind, when the defendant bought out the plaintiff on the same terms, and the final agreement and release were executed and delivered.

It was not until four years thereafter and upon information furnished by one Spalding, whose relations to the parties will be referred to later, that the plaintiff brought the present suit. The master's analysis of the material transactions are "the additional issue of stock," "the alleged manipulation of dividends," "the Thoma stock," "the Spalding transaction," and the defendant's "charges for services as patent solicitor." We are satisfied from the tenor and effect of the entire report, that in their consideration

the books of account, the stock ledger and the corporation records as between the parties should stand on the same footing as partnership books, to which the plaintiff never was denied access.

The directors having voted that the stockholders be permitted to purchase treasury stock at par to the extent of one share for every four and one half of their respective holdings, the defendant took his apportionment, but the plaintiff did not choose to exercise the option. Under these circumstances the plaintiff cannot rightly insist that the defendant violated the agreement. It also is shown that the sixty-nine shares issued to Thoma were subsequently surrendered, and no part ever passed to the defendant's ownership. The plaintiff as a director having participated in the vote, he must be held to have known that by the payment of dividends as voted the amount received on the defendant's stock and the Spalding stock as shown by the stock ledger would be sufficient to pay for the allotment of treasury stock on all of these shares. It is now necessary before discussing the transactions embraced within the master's phrase "Spalding stock" to recur fully to the plaintiff's position at the date of settlement.

The first settlement having been rescinded, the parties were free to negotiate as if it had not been made. The plaintiff in the first settlement acted for himself, but in making the final agreement and giving the release he acted under the advice of competent counsel. The master's findings as to the extent of his knowledge and means of knowledge are important. The plaintiff knew from what the defendant had told him that the latter had acquired nine hundred and seventy-four shares, although the plaintiff always had claimed that the equality agreement controlled between them except as modified by the agreements to issue stock to Spalding and Thoma. He also knew that the shares included the Spalding stock and that the defendant paid a salary to Spalding. The plaintiff's faith in the defendant's integrity had begun to wane, and the parties mutually regarded the settlement "as one, not of mathematics or of bookkeeping, but of trading." While the original agreement had been called to the attention of counsel, who was doubtful as to its scope and effect after the formation of the corporation, no further inquiries were made. A lump sum or valuation was offered and accepted without any investigation of the assets; their business relations were closed, and the plain-

tiff "fully comprehended the nature of the instruments which he signed, including the release." It is manifest from this part of the report that the plaintiff and his counsel were content to make the best of what they considered an unsatisfactory bargain. If the plaintiff is treated as a vendor or as a purchaser, the duty of disclosure resting on the defendant did not embrace under the conditions shown the transactions discussed, and no ground for rescission appears. *Topliff* v. *Jackson*, 12 Gray, 565, 569. *Law* v. *Law*, [1905] 1 Ch. 140.

But the defendant's manipulation of the Spalding stock and his charges for legal services stand differently. Where a fiduciary relation is established, means of information or constructive notice is not the equivalent of actual knowledge. The assent of the plaintiff, even if he was desirous of withdrawing from all further association with the defendant on the best offer he could get, did not comprise transactions solely in the defendant's private interest of which he was ignorant. If he is to be bound, his assent must rest on his standing by with knowledge of his rights without making any protest. *Manheim* v. *Woods*, 213 Mass. 537, 543, 544. *Hayes* v. *Hall*, 188 Mass. 510. *Freeman* v. *Freeman*, 136 Mass. 260, 263. *Lacey* v. *Hill*, 4 Ch. D. 537, 547, 548. The master reports concerning the agreement entered into by the defendant and the plaintiff with Spalding, that while the plaintiff was induced to believe that Spalding was to be employed by the corporation and paid in stock to the extent of one hundred and twenty-five shares from each of their holdings, or the equivalent in treasury stock, the defendant purposed through the arrangement to advance his plan for obtaining corporate control. It is found that Spalding became the confidential employee of the defendant, and that, as neither wished to decrease his holdings, treasury stock, amounting to three hundred and forty-six shares, while issued in his name was immediately transferred by indorsement of the certificate to the defendant, who at all times was the actual owner, and received the dividends. It is further found that under the vote to issue treasury stock, the proportional part amounting to seventy-seven shares to which Spalding appeared to be entitled, although issued in the name of the defendant's father, was in fact paid for and controlled or owned by the defendant. It is obvious that neither the defendant's statement as to his ownership

of stock nor the plaintiff's knowledge that Spalding's salary was paid by the defendant nor an examination of the stock ledger would have acquainted the plaintiff with what the defendant had done for his own secret pecuniary advantage.

The agreement having remained operative after incorporation, as we have said, the defendant had undertaken, and the master reports, that the plaintiff understood that he had undertaken to look after the "legal end of the enterprise" while the plaintiff had "charge of the business management," each working without remuneration. It appears that while the corporation paid all charges for legal services rendered before as well as after its formation, none of the charges appeared on the books except that the stubs of the check books would have shown the later but not the preliminary payments. If it were not for the master's finding that the defendant, being in doubt as to the true construction of the agreement, "purposely refrained from bringing these charges" to the plaintiff's attention, coupled with the finding that the payments were made under his personal supervision and direction, we should hesitate to exclude them from the settlement. The defendant's gains, however, from this source were in violation of the agreement, as well as the appropriation of stock, and the plaintiff when making the settlement parted unknowingly with property of much value, and the master unhesitatingly states that the defendant knew of his ignorance but remained silent. *Maddeford* v. *Austwick*, 1 Sim. 89, affirmed in 2 Myl. & K. 279.

What should be the measure of relief? The consideration the plaintiff received was not paid in money, but consisted partly of "notes, cash and preferred stock" of a foreign corporation, and upon a valuation of $300 the plaintiff also was "to take over the elevator, pulleys, shafting, and belting at the factory" of the company. The settlement having been fully executed, it is reasonably certain from the lapse of time and the nature of a substantial part of the consideration, that the parties cannot be restored to the position they were in when the settlement was consummated. *Brown* v. *Hartford Fire Ins. Co.* 117 Mass. 479. But the plaintiff notwithstanding his inability to rescind can recover money damages. *Coolidge* v. *Brigham*, 1 Met. 547, 553. *United Zinc Companies* v. *Harwood*, 216 Mass. 474, 477, 478, and cases cited. The defendant consequently is chargeable,

in a partnership accounting on the basis of the agreement of equality and as of the date of the settlement, with the value of the Spalding stock, and the apportionment of treasury stock to which this stock was entitled, and which was actually issued, with all dividends received thereon, less any payment on account of treasury stock made to the company, and also with the payments for legal services, with interest on the whole amount from the date of settlement to the date of filing the bill.

As to the defendant company the bill is to be dismissed. *Pratt v. Tuttle,* 136 Mass. 233, 234.

The case is to be recommitted to the master, but the terms of the decree are to be settled before a single justice.

*Ordered accordingly.*

*J. B. Studley,* for the plaintiff.

*S. L. Whipple,* (*A. Lincoln* with him,) for the defendants.