JAMES M. CUTTER & others *vs.* REUBEN E. DEMMON.

In an action for money had and received, evidence that there was an understanding between the parties that when the defendant sold his own stock in a certain company he would sell the plaintiffs' stock therein; that the plaintiffs delivered their stock to the defendant to be sold under this agreement; and that the defendant sold it for $60 a share and paid the plaintiffs only $40 a share, will support a verdict for the plaintiffs: and such verdict will also be supported by evidence that the defendant told the plaintiffs that certain persons wanted to buy the stock, but would pay only $40 a share; that the defendant was negotiating a sale to these persons for the plaintiffs and others as well as for himself; that said persons gave the defendant $60 a share; and that the defendant paid the plaintiffs only $40 a share.

The defendant promised the plaintiffs to sell their stock in a company at the same rate at which he sold his own; he then agreed with third persons to sell them stock of the company at a certain price; and employed a broker to procure the stock for him; the broker applied to the plaintiffs and told them that the purchasers would pay only a certain price, which was, in fact, smaller than the purchasers had agreed to pay the defendant. *Held*, that the plaintiffs' ignorance that the broker was employed by the defendant would not affect the defendant's liability to them.

In an action for not selling the plaintiffs' stock at the same time the defendant sold his own, as he had agreed to do, the defendant testified that he had never agreed to sell the plaintiffs' stock. *Held*, that the plaintiffs might introduce evidence of an admission by the defendant that he had agreed to sell the plaintiffs' stock at the same time he sold his own, although the circumstances when this agreement, according to the admission, was made, were not the same as of the agreement relied upon to support the action.

In an action for procuring shares of stock from the plaintiffs at a certain price and selling them to third persons at a higher price, contrary to an agreement with the plaintiffs, evidence that the defendant procured shares of the same stock from other persons at the same price as he paid to the plaintiffs is inadmissible.

CONTRACT by James M. Cutter, Levi L. Tower, Stephen A. Tower and Isaac L. Kidder, partners, under the style of Cutter, Tower & Company. The first count of the declaration alleged that the plaintiffs were possessed of 112 shares of the capital stock of the Butler Colliery Company; that the defendant requested them to put their said stock in his hands for sale; that they did so put their stock in his hands, and he agreed, in consideration thereof, to sell it at the same terms as his own; that he sold his own stock for $60 a share, and also 56 shares of the plaintiffs' at the same rate, and owed the plaintiffs the sum of $1120, being the amount of 56 shares, at $60 per share, less the sum of $2240 already paid on account." The second count was for money had and received.

Tower, one of the plaintiffs, testified that the plaintiffs owned 112 shares of the stock of the Butler Colliery Company; that a year or more before the sale declared on, he had gone to the defendant and told him that the plaintiffs would sell their stock at the same price and at the same time that he did his; that the defendant told him that when he sold his own he would sell the plaintiffs'; that the witness authorized him to do so; that the agreement had never been rescinded; that in August, when the sale took place, the witness was away; that the defendant was one of the directors of the company; and that there had been previous efforts made to sell the property of the company.

Kidder, one of the plaintiffs, testified that in August, one Daniel L. Demmon, the defendant's brother, " came to him, and upon finding that Tower was away, told him that there were certain western parties who wanted to buy a majority of the stock of the company, and asked him if they wanted to sell theirs; that they would give $40 cash, or $45 in notes, per share; that the witness said he thought it was too low, but that the plaintiffs would do whatever they did, meaning the directors; that the next day, Daniel L. Demmon called and told him that all they would take was 56 shares, and they could get no better price than the one named the day before, and if he wanted to sell, he must do it then, as they could not wait, as the bargain was to be closed the next day; that the witness asked if he could not get more than $40 per share; that the defendant said, ' That is all we can get for it, and you shall have the same for yours we get for ours;' that the witness said that if that was all they were getting for it, he supposed he would sell; that he supposed he was selling to the western parties; that he then went down to the office of Daniel L. Demmon, who was the treasurer of the company, and transferred his shares, and Daniel L. Demmon went out and got the money and paid him for them, $40 per share; and that he had been advised by Tower, and knew of the bargain between Tower and the defendant." On cross-examination, he testified, " I supposed I was selling with the directors and that all acted together."

Thomas Scott testified that he was present at the conversation between Kidder and Daniel L. Demmon; that the latter said, " We want the stock, and if you will sell, we will all share alike, you shall have the same that we get."

The plaintiffs called the defendant as a witness, who testified " that he and one Butterfield made a contract in writing with certain parties from Western New York, by which they agreed, in one week, to deliver 650 shares of the Butler Colliery Company to them, at $60 per share; that not having stock enough, he asked his brother, Daniel L. Demmon, to get the balance for him wherever he pleased, so that they could fulfil their contract; that he instructed Daniel L. Demmon to get these shares for him, and have them ready for delivery on a certain day; that that was all the instruction his brother ever had; that at the time appointed, Daniel L. Demmon had obtained the requisite number of shares; that the defendant, taking his own stock and the 56 shares received of the plaintiffs, transferred them to the western parties to fulfil the contract; that the stock was sold to the western parties for $60 a share; that he, the defendant, did not know from whom the shares were purchased; that he gave no limits to Daniel L. Demmon, as to the price, because he must have the shares at any price; that the shares were delivered according to contract and the money paid; that he had never agreed to sell Tower's stock, or to become in any way responsible for it; and that he never had any of it in his possession." This was substantially the evidence offered by the plaintiffs.

The defendant contended that the evidence offered did not tend to prove the case stated in the declaration; that as it appeared that there was another party equally liable, he should be summoned in to defend; and that there was no evidence on which the case could be submitted to the jury; but these objections were overruled by the judge, and the defendant was ordered to proceed.

Daniel L. Demmon testified " that he was called to the defendant's office, and was told that the defendant and one Butterfield had made an agreement to deliver 650 shares of the Butler Colliery Company's stock to certain western parties on a certain day,

and they wanted the witness to purchase about 400 shares, which, with what they owned, would make up the amount; that thereupon he went to various parties and offered to buy their stock at $40 cash, or $45 notes; that he went to the plaintiffs among others; that he saw Kidder, asked him if he wanted to sell his stock, and told him he had been to several parties and they were going to sell for that price; that Kidder asked him if that was the most anybody got; that Kidder did not decide; that he went again the next day and told Kidder he must make up his mind or he would lose his chance to sell; that Kidder asked him if that was the highest price that he could get for it; that he answered that that was all he could pay for it, and that he had paid no more than that for all he bought; that thereupon Kidder sold him the stock and transferred it to him; that he paid him for it $40 per share; that he never told Kidder that that was all 'they' could get for it; and that he did buy all the stock for $40 per share."

The defendant also called one of the directors of the company and asked him how much he sold his stock to Daniel L. Demmon for. The plaintiffs objected, and the judge excluded the evidence.

In rebuttal, Tower was allowed, against the defendant's objection, to testify to a conversation he had with the defendant since the case had been closed for the defendant, in which the defendant admitted that on one occasion, some year or more before the sale of this stock, he had, when the company was trying to sell out to one Green, agreed to sell Tower's stock if he did his own.

The defendant contended that there was no evidence to go to the jury; that the defendant was not bound by the statements of his agent to Kidder as to the price he was getting for the stock; and that the defendant could not be held for any fraud or deceit of Daniel L. Demmon, among other reasons, because there was no evidence that Daniel L. Demmon told the plaintiffs he was the agent of the defendant.

The judge, among other instructions to which no exception was taken, instructed the jury as follows:

" It is necessary for the plaintiffs to show that their stock was transferred at the request of the defendant, upon his agreement

that they should receive as much as he received. The plaintiffs rely: 1st. On an agreement previously made with them by the defendant personally, to the effect above stated, and upon a subsequent delivery of the stock under it. 2d. Upon an agreement made at the time of the delivery of the stock with the defendant s agent, under which delivery was made to the effect stated. These agreements are denied by the defendant, and the plaintiffs are to make out the one or the other in order to recover. The plaintiffs are to show, also, that the defendant has received a larger sum upon the stock which the plaintiffs transferred than he paid over to the plaintiffs, and are entitled to recover, if they recover at all, only that overplus.

"If the contract made at the time of the delivery of the stock has been shown by the plaintiffs as claimed by them, but such contract is shown to have been made with Daniel L. Demmon as agent for the defendant, they may recover of the defendant, even if Daniel L. Demmon did not disclose his agency. The burden of proof is on the plaintiffs to show, on that part of the case, that Daniel L. Demmon was authorized, as agent, to make the contract claimed to have been made by him."

The jury returned a verdict for the plaintiffs, and the defendant alleged exceptions.

*E. R. Hoar & L. M. Child,* for the defendant.

*J. D. Long,* for the plaintiffs.

WELLS, J. The evidence would warrant a jury in finding that there was an understanding between the plaintiffs and the defendant that whenever the defendant should sell his own stock he would sell that of the plaintiffs, and that he was authorized to sell for them at the same price as he sold for himself; that this arrangement or understanding was still subsisting at the time of the transactions in question; and that 56 shares of their stock were transferred by the plaintiffs and delivered to the defendant, through Daniel L. Demmon, for the purpose of being sold in pursuance thereof. Or they might find, independently of any such previous agreement or understanding, that the proposition upon which the plaintiffs parted with those shares, was that "certain western parties wanted to buy a majority of the stock" and

would give $40 only, and take but 56 shares from the plaintiffs; that the defendant was negotiating a sale to those parties for the plaintiffs and others as well as for himself; and that $40 was named, not as the price of a sale then made to the defendant, or to his brother, but as the highest sum that could be obtained from the parties who were proposing to purchase, through the defendant, their several interests.

Upon either of these findings the plaintiffs would be entitled to recover the price for which their stock was in fact sold to those parties; and the instructions to that effect were correct.

It is immaterial whether the facts proved were in strict accordance with the allegations of the special count, because in either aspect of the case the general count for money had and received would be supported.

The jury were warranted by the evidence in finding that Daniel L. Demmon was the agent of the defendant alone; and that the defendant sold and took the proceeds of the shares of the plaintiffs. It is immaterial whether the plaintiffs knew that Daniel L. Demmon was acting as agent for the defendant or not; except so far as it might bear upon the question of fact; to wit, whether there was an absolute sale and delivery by the plaintiffs to Daniel L. Demmon, or whether the delivery was merely for the purposes of a sale to the " western parties."

The admission by the defendant testified to by Tower, although it did not prove the precise facts relied on to support the action, was competent to be considered by the jury in connection with the other testimony, and may have had some bearing to affect his previous testimony in the case.

The evidence offered to show for what price other persons sold their shares to Daniel L. Demmon, was incompetent to affect the plaintiffs, and was rightly rejected.     *Exceptions overruled.*