EDWIN P. LINDSAY *vs.* JESSE G. SWIFT & others.

Suffolk.   March 12, 14, 1918. — May 27, 1918.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Equity Pleading and Practice,* Master's report. *Equity Jurisdiction,* For an accounting, Fraud. *Trust,* Fiduciary relation of agent or employee. *Agency,* Duty of fidelity.

Where a suit in equity is referred to a master under a rule directing him "to hear the parties and their evidence, to find the facts, and report the same to the court," the master has no authority to transmit to the court at the request of one of the parties certain portions of the evidence which the master has refused to make a part of his report, and, where in such a case portions of the evidence are transmitted by the master without an order of court directing it, they cannot be considered.

In a suit in equity, by a dealer in white and manila paper against the former manager of the plaintiff's manila department and a corporation of which he had obtained control at the time that he severed his connection with the plaintiff, for an accounting, on findings made by a master it was *held* that the individual defendant had violated no duty to the plaintiff in regard to the plaintiff's manila department, that the parties understood that their contract was about to be terminated at a fixed date for which arrangements were being made, and that the individual defendant rightfully could seek employment elsewhere or negotiate for other business connections for his own sustenance, protection and advantage, and that, in view of the findings of the master, it could not be said that a certain paper bag company, for which the plaintiff had held the exclusive agency in a defined territory, in exercising its legal right to make the defendant corporation its exclusive agent in that territory was induced to cancel the plaintiff's agency through the individual defendant's unlawful procurement, that there was no evidence to support the allegations of fraud, conspiracy and breach of fiduciary duty contained in the plaintiff's bill and that the bill should be dismissed as against both defendants.

BILL IN EQUITY, filed in the Supreme Judicial Court on October 3, 1910, by Edwin P. Lindsay of Boston, a dealer in white and manila paper, who formerly carried on that business as a member of the firm of D. F. Munroe and Company, and, after the death of his partner D. F. Munroe, continued to carry on the business individually under the firm name, against Jesse G. Swift of Boston, William H. Claflin of Boston and William H. Claflin and Company, Incorporated, a corporation, alleging that the defendant Swift was employed by the plaintiff as manager of the manila depart-

ment of the plaintiff's business and that that defendant by reason
of the confidential character of his contract of employment
stood in a fiduciary relation toward the plaintiff and that he be-
trayed the trust and confidence reposed in him by entering the
employ of the defendant corporation and becoming its president
and acquiring a substantial part of its capital stock, and that the
defendants wrongfully procured and took away from the plaintiff
the exclusive agency in a designated territory of the Continental
Paper Bag Company, a corporation having its principal place
of business in New York, for which the plaintiff had been the
exclusive agent in the States of Massachusetts, Rhode Island,
New Hampshire and Vermont.

The first and second prayers of the bill were as follows:

"1. That an accounting may be taken of the amount of prof-
its which have accrued to the defendant William H. Claflin Com-
pany, Inc., out of its exclusive agency for the sale of the product
of the Continental Paper Bag Company, and that a decree be
entered ordering the payment of an amount so found upon ac-
counting to the plaintiff; or, in the alternative, that judgment for
said amount be entered in favor of the plaintiff as against all the
defendants, and execution issue thereon.

"2. That an account be taken of the shares of stock and
any other consideration paid by the defendants Claflin and the
Claflin Company, or either of them, to the defendant Swift as
and for a compensation for his violation of duty and betrayal of
trust in connection with the transfer of the exclusive agency of the
Continental Paper Bag Company from the plaintiff to the de-
fendant corporation."

The case was referred to a master by an order directing him "to
hear the parties and their evidence, to find the facts, and report the
same to the court."

The master filed a report in which he made the findings that are
stated in the opinion. In regard to the request of the defendants
to report the evidence, his report contained the following state-
ment: "The defendants, in their written objections, have re-
quested me to report to the court all the testimony and all the
exhibits in the case. The testimony is voluminous, comprising
over one thousand typewritten pages, and some of the ex-
hibits (the books of account of D. F. Munroe and Company)

are of large bulk. I decline to report all the testimony and all the exhibits unless directed so to do by the court. Such parts of the testimony and such exhibits (excepting said books of account) as the defendants, in their objections, have specifically referred to, I submit herewith under a separate cover."

The case came on to be heard by *De Courcy,* J., upon the exceptions of the respective parties to the master's report, whereupon the parties waived their exceptions and the case was reserved by the single justice for determination by the full court on the pleadings and the master's report with the exhibits attached thereto.

*S. L. Whipple,* (*W. S. Youngman* with him,) for the plaintiff.

*C. F. Choate, Jr.,* (*H. Albers* with him,) for the defendants.

BRALEY, J. The master states that the original order of reference directed him "to hear the parties and their evidence, to find the facts and report the same . . . with such portions of the evidence as either party may request." But on the record, the interlocutory decrees appointing him and giving directions as to his duties not having so provided, he was without authority to transmit at the request of the defendants the portions of the evidence annexed to the report, and it cannot be considered. If either party desired the whole or any part reported, application therefor should have been made to the court. *Ginn* v. *Almy,* 212 Mass. 486, 500.

The master has found that for some time before the association of the defendant Swift, hereafter designated as the defendant, with the firm, the plaintiff and one D. F. Munroe were dealers in paper under the firm name of D. F. Munroe and Company. The organization, herein referred to as the Munroe Company, consisted of two departments, one known as the white paper department and the other as the manila department forming comparatively the smaller part. The plaintiff upon the death of Munroe, which occurred some ten months after the defendant had become connected with him, purchased Munroe's interest and continued the business under the name of the old firm. The white paper department thenceforth was solely under the control of the plaintiff, who, also using the firm name, acted as selling agent for two paper mills, but the manila department was conducted and controlled under an arrangement with the defendant, described in the bill as constituting him manager of the manila

department sustaining fiduciary relations to the plaintiff. While no contract in writing ever was made, the master reports that, upon being informed by the defendant who was then the secretary of a corporation dealing in part in manila paper, that he intended to engage in business for himself, the plaintiff proposed that the defendant should become connected with the firm taking charge of the manila department, which was to be enlarged and extended. The defendant having accepted, the parties in substance agreed that the manila department should be under the management of the defendant and conducted separately from the other business, although the Munroe Company was to furnish gratuitously all necessary capital as well as giving to the manila department the use of the offices, storehouse and other facilities for the transaction of business, but whatever necessary expenses remained were to be borne by the department. The defendant agreed to "bring to said department all the business he controlled or could acquire and certain salesmen, familiar with the trade, and should devote his best efforts and his entire time to the management thereof; and that the profits of the department should be divided equally between D. F. Munroe and Company and said Swift." The agreement also provided that certain merchandise representing the defendant's interest in the corporation should be deposited in the Munroe Company's warehouse, and when sold the proceeds were to be paid to him. The defendant thereupon became manager of the manila department and until their relations were severed the agreement, which was not limited in time, and after Munroe's death "continued to be the basis of the relations" between the parties although the defendant submitted to the plaintiff the draft of a contract "defining their agreements and arrangements more fully" which he declined to sign. The master also states, in paragraph two, that while under the original agreement the defendant did not receive interest on money not withdrawn from the business, it later was agreed that interest at six per cent should be allowed on whatever sums he did not choose to withdraw. It is found explicitly that the defendant confined his activities entirely to the management of the manila department which was carried on separately from the white paper department, and had no interest in and nothing to do with the other business of the Munroe Company. He solicited trade, directed the purchase and sale of

merchandise, hired the employees, attended to the correspondence, dealt with customers, collected debts, and did what he could to make the department successful. When the defendant assumed the management certain office fittings belonging to the Munroe Company were turned over to the manila department, but thereafter all furniture and equipment needed for that department were charged to it, together with all losses from bad debts or trade losses, and all depreciation therewith connected. "To some extent it even competed with" the white paper department. A separate set of books was kept although the bank or cash accounts of the two departments were not separated. The plaintiff under the original agreement was required to furnish whatever capital might be required, and this he did. He also retained possession or control of all the funds and money of the manila department, and the proceeds of sales of merchandise, which were deposited in the bank account standing in the name of the Munroe Company. If money was to be hired the notes were signed in the name of the company, and all bills, notes, debts and expenses were paid by the plaintiff in cash or by checks drawn by him on the bank account of the company. The parties never held themselves out as copartners, and all the business, in so far as those who dealt with them were concerned, was transacted under the name of the Munroe Company, although occasionally the plaintiff as well as the defendant referred to the other as "his partner," and also as "manager of the manila department of D. F. Munroe and Company" or as "manager of D. F. Munroe and Company."

The essential elements of the parol agreement as modified by the allowance of interest to the defendant are not ambiguous. The defendant engaged to give his entire time and devote his best efforts in the management of the manila department which as between the parties was treated as distinct from the white paper department and the plaintiff's agency. In the accomplishment of the enterprise the master finds that the plaintiff exercised no personal supervision or control over the defendant who was free to transact the business of the manila department in his own way as to hiring of salesmen, making of purchases and sales, the selection of customers and giving credit.

The defendant contended before the master that having been a business arrangement for their mutual and common benefit to

which the plaintiff acting under the name of the Munroe Company contributed the necessary capital and certain business facilities, while he put in his services, all the business controlled by him, or which he could acquire, and certain salesmen familiar with the trade, and whatever profits accrued were to be divided equally, enough appears to warrant a finding that as between the parties a partnership existed under *McMurtrie* v. *Guiler*, 183 Mass. 451, 453, and cases cited; *Estabrook* v. *Woods*, 192 Mass. 499; *Phipps* v. *Little*, 213 Mass. 414; *Arnold* v. *Maxwell*, 223 Mass. 47, 49, and *Deutschman* v. *Dwyer*, 223 Mass. 261, 264. The plaintiff however insists that notwithstanding the terms of the contract and the manner of performance by the parties, the defendant was merely his servant.

The master before whom these conflicting positions first were taken having reviewed their relations in the light of evidence not reported, although his essential findings, which we have previously stated, appear, concludes, that " Whether, on the facts above stated . . . their relationship should be regarded as that of copartners . . . or that of employer and employee, with the rights and duties of such, is a question on which I make no finding or ruling, as it seems to me to be a question of law for the court rather than a question of fact for the master." The question is one of mixed law and fact well within the master's authority to have decided. *Gunnison* v. *Langley*, 3 Allen, 337. *Bradley* v. *Borden*, 223 Mass. 575. But, even if left open, we do not find it necessary to define technically the legal character of their contractual obligations. It is plain that however denominated the relation was one of mutual trust and confidence. It is not material whether it be characterized as a partnership, or as that of master and servant or of principal and agent. The defendant in either capacity was bound to act in good faith, and could not without the plaintiff's knowledge or assent enter into adverse transactions, or make a profit out of, or deal with the business for his own benefit except as stipulated, while the contract continued in force. *Cutter* v. *Demman*, 111 Mass. 474. *Greenfield Savings Bank* v. *Simons*, 133 Mass. 415. *Quinn* v. *Burton*, 188 Mass. 466. *Randall* v. *Peerless Motor Car Co.* 212 Mass. 352. See *Hayes* v. *Hall*, 188 Mass. 510, 511.

The manila department under the defendant's efforts prospered greatly, and in October, 1908, having "become dissatisfied with

his half share of the net profits," he suggested to the plaintiff "that he thought he ought to have two thirds." The plaintiff made no definite reply, saying that he would consider it, and the master reports that, notwithstanding later conversations in which the basis for a new agreement was discussed, no definite understanding for the future was reached except that it was mutually understood that their relations as they had existed in the past should continue until January 1, 1909, or in other words, their business relations were then to terminate. *Karrick* v. *Hannaman,* 168 U. S. 328. While the question on the part of each of making new arrangements between themselves was pending, the defendant, unknown to the plaintiff but at the solicitation of the Claflin Company, entered into negotiations with that company, the defendant corporation, which ended in an option shortly before December 29, 1908, whereby the defendant was to have the right to buy a majority of the stock and become the manager of the corporation, controlling the business. It was at this time a customer of the plaintiff of both kinds of paper. The plaintiff as the Munroe Company also had the exclusive agency within the territory described in the bill for the sale of the products of the Continental Bag Company, a large manufacturer of paper bags and other forms of manila and fibre papers, with which the defendant on December 30, 1908, conferred, stating that he and the plaintiff had agreed to separate, and that he held an option on a majority of the stock of the Claflin Company. The bag company thereupon agreed that if the option were exercised it would transfer its business to the Claflin Company, and the defendant then said that he would exercise the option, which he subsequently did, and the bag company on December 30, 1908, withdrew its agency with the plaintiff which existed under a parol contract terminable at the will of the first company, and on the same date wrote the Claflin Company that if the defendant acquires "control of your company" we "hereby appoint you . . . our sole and exclusive agents for the sale of paper bags . . . for one year from January 1, 1909."

The plaintiff alleges that these transactions are severally a breach of trust which entitles him to an accounting and to compensation in damages. But the purchase of the stock with the resultant corporate control was not a violation of any duty connected with the manila department. The parties from the tenor

of the entire report must have mutually understood, as previously said, that their contract would be terminated on a fixed date for which arrangements were being made, and the defendant meanwhile rightfully could seek employment elsewhere or negotiate for other business connections for his own sustenance, protection and advantage. *American Stay Co.* v. *Delaney,* 211 Mass. 229, 232. The report contains no finding that he proposed to appropriate the patronage of one of the plaintiff's customers, even if, as a result of the acquisition of the stock, the corporation might buy from other parties in the future.

As to the bag company it is immaterial that the agency originally was procured through the defendant's efforts, of whose experience and ability in selling its product the company wished to avail itself. The agency had become part of the business which the defendant could not filch away. *Moore* v. *Rawson,* 185 Mass. 264. *Essex Trust Co.* v. *Enwright,* 214 Mass. 507. *Arnold* v. *Maxwell,* 223 Mass. 47. The master however finds, that both the plaintiff and the defendant in anticipation of the separation respectively sought to control the agency and each, apparently without the knowledge of the other, had put his view of the matter before the managing officers. The defendant's relations with them were much more friendly and intimate than their relations with the plaintiff, and in the manila department "for some years he managed the agency of their company to their satisfaction. They desired that he should continue to manage it, provided he was connected with a responsible and established concern. It did not, therefore, require any urging" on the defendant's "part to induce them to transfer the agency from" the Munroe Company to the Claflin Company after the defendant had told them that he "had obtained an option on a majority of the stock of the Claflin Company and that he should exercise said option and associate himself with said company."

In view of these findings the allegations of fraud and conspiracy, while sufficiently stating a breach of fiduciary duty, are not sustained by the report. It certainly cannot be said as matter of law that the paper bag company, having acted under the exercise of its own legal rights, was induced to cancel the plaintiff's agency through the defendant's unlawful procurement. What has been said also disposes of any ground of relief as against the defendant the Claflin Company, and the result is, that an inter-

locutory decree is to be entered confirming the master's report followed by a decree dismissing the bill with costs.

*Ordered accordingly.*