GEORGE M. FLINT & others *vs.* EDMUND D. CODMAN & others.

Suffolk.    November 21, 22, 1923. — January 22, 1924.

Present: RUGG, C.J., BRALEY, PIERCE, & CARROLL, JJ.

*Trust,* Construction of instrument creating trust, Real estate trust.

Where a suit in equity comes before this court on a bill of exceptions, which sets forth a statement of evidence before a single justice, requests for findings of fact and rulings of law and facts found and rulings made by the single justice, and contains a statement that it includes " all of the evidence material to the questions raised by this bill of exceptions," only questions of law are presented to this court, and the only question of law as to findings of fact is, whether there was evidence to support such findings, the question, whether this court would have made the same findings as did the single justice, not being raised.

Upon a bill presenting exceptions saved at the hearing by a single justice of a suit in equity by minority shareholders of a real estate trust against the trustees and the shareholders controlling the trust, to enjoin a sale and conveyance of the trust property to holders of the majority interest and to declare void an agreement for such sale, it was *held,* that findings by the single justice, that the trustees in agreeing to the sale were uninfluenced by any considerations except to obtain a fair price for the property and that the trustees in the discharge of their duties exercised the skill and judgment due from them in their fiduciary relation, could not be said, upon the evidence reported, to be unwarranted; and that such findings of fact must stand.

A declaration of trust, which was the foundation of a real estate trust, provided, as to the rights, powers, duties and obligations of the shareholders and trustees, as follows: " The trustees may call meetings of the shareholders at any time, and shall do so upon written request of the holders of one-twentieth of the shares outstanding . . . . At any meeting, the holders of a majority of the entire number of shares may fill any vacancy existing in the number of trustees, may depose any or all of the trustees and elect others in their places, may authorize the sale or mortgage of the property, or any part thereof, held by the said trustees, and may alter or amend this agree-

ment or terminate the trusts hereunder.   For all other purposes a majority of those shareholders present may decide on matters properly coming before them.   Shareholders may vote by proxy, and for the purpose of voting at meetings each share shall be entitled to one vote.   At any meeting five shareholders, or their proxies, representing one-fifth of all of the shares outstanding, shall constitute a quorum."   *Held,* that

(1) The arrangement constituted by the declaration of trust was a partnership among the shareholders;

(2) As a matter of construction, provisions of the instrument giving to the trustees " the sole ownership, control, power of sale, leasing, letting and exclusive management of all the [trust] property " and providing for the continuance of the trust for a described period " unless the same shall be sooner terminated by the acts of the trustees or shareholders," and that upon " the termination of the trust by the expiration of time or for any other cause, the trustees shall sell the trust property and divide the net proceeds among the shareholders, in proportion to their respective interests," authorized the shareholders to terminate the trust at any time, sell the real estate and distribute the assets;

(3) The rule, controlling the conduct of partners among themselves and requiring each partner to deal with his partners with the highest degree of good faith concerning partnership matters, applied to control the acts of the shareholders of the trust above described among themselves;

(4) The circumstance, that the legal title to the trust property was vested in trustees instead of in all the shareholders, could make no difference in this particular as to the rights and obligations of the shareholders among themselves;

(5) The trustees could not be authorized by a vote of the majority of the shareholders to make a conveyance of the property to such majority against the protest of the minority of the shareholders;

(6) The rule controlling the acts of the shareholders in this trust among themselves was different from that which applies to a sale by a corporation, by vote of a majority of its stockholders, to its own directors, a corporation being a legal entity and separate and distinct from its stockholders.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on April 20, 1923, by minority shareholders of "Lovejoy's Wharf Trust," who brought the suit in their own behalf and in behalf of all other shareholders similarly interested who might " elect to come in and contribute to the costs and expenses of this suit," against trustees of the trust and certain corporations holding a majority of the shares of the trust, seeking to enjoin a sale and conveyance of the property of the trust to the defendant corporations, that an agreement for such sale be cancelled and that an accounting be had.

The suit was heard by *Crosby,* J.   Material facts found

by the single justice are described in the opinion. Of requests for rulings made by the parties, only the following request presented by the plaintiffs is material by reason of the opinion:

"21. The 'Agreement and Declaration of Trust' created a partnership, and the majority partners cannot vote to sell or cannot sell all or substantially all of the assets of the trust to themselves against the expressed dissent of any minority partner."

The single justice ruled that the defendant trustees were entitled to consummate the sale for the amount agreed upon and ordered the entry of a decree dismissing the bill. The plaintiffs alleged exceptions, the bill reciting evidence which was before the single justice, setting forth requests of the parties for findings and rulings and a statement by the single justice of his findings and rulings, together with the following statement: "The foregoing together with the exhibits which are annexed hereto and made a part hereof is all of the evidence material to the questions raised by this bill of exceptions."

. *D. J. Lyne,* (*R. C. Evarts* & *M. F. Hall* with him,) for the plaintiffs.

*J. P. Wright,* (*F. King* with him,) for Quincy Market Cold Storage and Warehouse Company, American Glue Company and Loose-Wiles Biscuit Company.

*R. Homans,* (*F. Adams* with him,) for Edmund D. Codman & another, trustees.

RUGG, C.J. This is a suit in equity. The plaintiffs, a small minority of the shareholders in the Lovejoy's Wharf Trust, so called, seek to enjoin a sale of the corpus of the trust by the trustees, who are the individual defendants acting pursuant to a vote of the majority of the shareholders, to the three corporate defendants who collectively hold a majority of the shares, and to enjoin the termination of the trust. After a hearing, findings of fact and rulings of law were made and the entry of a decree ordered dismissing the bill. The plaintiffs' exceptions bring the case here.

Of the facts thus found, only those relevant to the controlling principles of law need to be stated. The individual

defendants are trustees under a declaration of trust dated in 1902, to continue for a period of twenty years after the death of the last survivor of numerous named individuals unless sooner terminated. The purposes of the trust were to acquire real estate and wharf property within a designated area in Boston, to erect upon it buildings, to lease the same and to pay dividends to the shareholders. The trust was organized by the sale and issuance of eighteen thousand shares represented by transferable certificates, each share being of the par value of $100.

The real estate was purchased in the name of the trustees and was held by them under the terms of the declaration of trust. The trustees caused to be constructed expensive buildings on the real estate and have leased them or parts of them from time to time. Each of the three corporate defendants at the time of the events here in issue was a tenant of part of the real estate of the trust. Together they occupied the greater part of it. At some time prior to April, 1923, the three corporate defendants by arrangement with each other and acting through a common agent purchased in the open market without fraud or deception nine thousand and eighty-three shares, being a majority of all the shares of the trust. There was no evidence that the trustees conspired or combined with the corporate defendants in making these purchases of shares, or that there was anything wrong about these purchases if the corporate defendants were authorized by law to become shareholders in such an enterprise. The corporate defendants then requested the resignation of one of the trustees and the substitution of a nominee of their own in his place. This request was denied by the trustees. Then it was proposed that the three corporate defendants purchase all the real estate of the trust and that the trust be terminated. Negotiations were had between the trustees and the three corporate defendants looking to that end. Finally a tentative agreement was reached, that the property should be sold to the three corporate defendants for $2,748,837, payment to be in cash. This agreement was reduced to writing and signed by the trustees and the three corporate defendants, but it was made subject to the condi-

tion that the trustees should first receive from the share-holders under the declaration of trust authority necessary to make the conveyance, meeting for that purpose to be called forthwith.

The trustees have managed the property for about twenty years, are men of large experience in knowing the values of such properties and were as familiar with its real worth as any one. In making this agreement the trustees acted in good faith throughout. They have not been influenced in any degree by appraisals of the property made at the instigation of the corporate defendants. Their conduct has been based entirely upon their independent and honest judgment, unaffected in any particular by improper inducements and controlled solely by a desire to obtain as large a price for the property as possible. They have not either consciously or unconsciously been moved by any other considerations. The price agreed upon was not less than the fair market value of the property. To quote from the findings, "While a higher price possibly might be obtained, it did not appear that more could have been realized. If it was put up for sale at auction a higher or a lower bid might be obtained . . . . When the great value of this property is considered, it may fairly be assumed that a purchaser for cash could not readily be found; it did not appear at the hearing that any one is ready and willing to buy the property other than the corporate defendants, or that the trustees can obtain a higher price."

A meeting of the shareholders of the trust was held on April 13, 1923, at which a vote was passed authorizing and directing the trustees to sell the entire real estate held by them as such trustees to the three corporate defendants in accordance with the terms of the agreement between them and the trustees. The total number of shares represented by shareholders present in person and by proxies and voting on this proposition was sixteen thousand nine hundred and seventy, of which fifteen thousand nine hundred seventy-six were in favor of and nine hundred ninety-four against the sale. The nine thousand and eighty-three shares held by the corporate defendants were voted in favor of the sale. The

defendant Codman voted by proxies running to himself and his cotrustee on six thousand and twenty-seven shares in favor of the sale. The plaintiffs were present at the meeting and voted on their shares in opposition to the sale and took other steps to indicate their opposition to the sale.

These facts have been found by the single justice who heard the case. They are all which are material to the grounds of this decision.

The case comes before us on a bill of exceptions and not by appeal. Hence only questions of law are presented. *Dorr* v. *Tremont National Bank*, 128 Mass. 349, 357. When a suit in equity comes to this court by a bill of exceptions and not by appeal, the only question of law as to findings of fact is whether there is evidence to support them. Such findings stand if they are warranted by the evidence. Requests for findings of fact, if proper under any circumstances, cannot successfully be made the basis for exceptions in such a case as the one at bar. The equity practice in this respect conforms to the practice in actions at law. Bills of exceptions in equity, as frequently has been pointed out, are not known in general chancery practice, and are a peculiarity of our practice. *Pigeon's Case*, 216 Mass. 51. See in this connection *Davis* v. *Boston Elevated Railway*, 235 Mass. 482, 494. *Moss* v. *Old Colony Trust Co.* 246 Mass. 139.

It is not necessary to narrate the evidence. It is too plain to require extended discussion that all the findings of fact which have been recited find support in the evidence. The finding that the trustees in agreeing to the sale were uninfluenced by any considerations except to obtain a fair price for the property cannot be said to be unwarranted. The testimony of the defendant Codman with the reasonable inferences which might have been drawn from it support the findings upon this point.

The testimony of the same witness was sufficient to support the finding that the trustees in the discharge of their duties exercised the skill and judgment due from them in their fiduciary relation.

. Even if the rule applicable to appeals in equity with report of the evidence were followed, no error is disclosed because

the findings of the single justice based upon the hearing of oral testimony could not be set aside as plainly wrong. *Lindsey* v. *Bird*, 193 Mass. 200.

An important part of the declaration of trust touching the rights, powers, duties and obligations of the shareholders and trustees is found in a part of Article 10. Its crucial words are these: " The trustees may call meetings of the shareholders at any time, and shall do so upon written request of the holders of one-twentieth of the shares outstanding. . . . At any meeting, the holders of a majority of the entire number of shares may fill any vacancy existing in the number of trustees, may depose any or all of the trustees and elect others in their places, may authorize the sale or mortgage of the property, or any part thereof, held by the said trustees, and may alter or amend this agreement or terminate the trusts hereunder. For all other purposes a majority of those shareholders present may decide on matters properly coming before them. Shareholders may vote by proxy, and for the purpose of voting at meetings each share shall be entitled to one vote. At any meeting five shareholders, or their proxies, representing one-fifth of all of the shares outstanding, shall constitute a quorum."

It is manifest from these words that the shareholders have the ultimate control of all affairs of the trust. While there is no provision for meetings of the shareholders at fixed times, such meeting must be called at any time on request of a comparatively small minority. At such meetings the trustees may be removed, the frame of the declaration of trust may be altered or the entire transaction terminated and its affairs liquidated. The trustees thus are subject to the shareholders. This kind of an arrangement constitutes a partnership among the shareholders under numerous decisions, even though the main corpus of the trust is real estate. *Williams* v. *Boston*, 208 Mass. 497. *Frost* v. *Thompson*, 219 Mass. 360. *Priestley* v. *Treasurer &* *Receiver General*, 230 Mass. 452. *Sleeper* v. *Park*, 232 Mass. 292. *Horgan* v. *Morgan*, 233 Mass. 381. *Howe* v. *Chmielinski*, 237 Mass. 532. *Neville* v. *Gifford*, 242 Mass.

124. See also *Dana* v. *Treasurer & Receiver General*, 227 Mass. 562, and *Williams* v. *Milton*, 215 Mass. 1, and cases there reviewed. *Gleason* v. *McKay*, 134 Mass. 419. *Phillips* v. *Blatchford*, 137 Mass. 510. *Ricker* v. *American Loan & Trust Co.* 140 Mass. 346.

It is provided by article 2 of the declaration of trust that " for the better adjustment of boundary lines " the trustees may " sell and convey portions of the trust property," and that except as otherwise provided the trustees shall have " the sole ownership, control, power of sale, leasing, letting and exclusive management of all the [trust] property." By article 14 provision is made for the continuance of the trust for a described period " unless the same shall be sooner terminated by the acts of the trustees or shareholders," and " Upon the termination of the trust by the expiration of time or for any other cause, the trustees shall sell the trust property and divide the net proceeds among the shareholders, in proportion to their respective interests."

It is not necessary to inquire whether under the declaration of trust power is conferred upon the trustees to make a sale of the entire real estate of the trust and terminate the trust before the expiration of the time limited by their own conveyance because there was an express vote of the stockholders authorizing the trustees to make the sale. As matter of construction these clauses of the declaration of trust authorize the shareholders to vote to terminate the trust at any time, to sell the real estate and to distribute the assets.

There is no provision in the declaration of trust to the effect that such sale may be made to any of the shareholders. Declarations of trust like that in the case at bar have been common in this Commonwealth for many years. The decisions of this court for at least forty years have held them to constitute partnerships among the shareholders. Those who become parties to such agreements must be governed by the settled principles of the law of partnership except as modified by the express terms and the inherent nature of the declaration of trust. It is to be presumed that they have entered into the agreement with the purpose to be subject to partnership obligations and limitations as well as to profit by partnership advantages and immunities.

Partners owe to each other the highest degree of good faith concerning partnership affairs. They cannot rightfully violate that duty for their own advantage. *Lovejoy* v. *Bailey,* 214 Mass. 134, 154. *Arnold* v. *Maxwell,* 223 Mass. 47. *Lindsay* v. *Swift,* 230 Mass. 407, 412. In the absence of special agreement in the instrument governing the rights of partners between themselves, the law does not permit one or more partners to compel the others of the partnership against their will to sell to them their fractional ownership in partnership assets. It is contrary to the rights of minority partners for the majority to sell partnership property to themselves notwithstanding the protest of the minority. No partners by superior financial power or the compulsion of greater numbers rightly can force another partner or partners involuntarily to submit to a sale to themselves of partnership property. These principles are settled respecting ordinary partnership. *Freeman* v. *Freeman,* 136 Mass. 260. *Hugh Stevenson & Sons, Ltd.* v. *Aktiengesellschaft für Cartonnagen-Industrie,* [1918] A. C. 239, 246, 250-252. *Wild* v. *Milne,* 26 Beav. 504. *Darby* v. *Darby,* 3 Drew. 495, 503. *Featherstonhaugh* v. *Fenwick,* 17 Ves. 298. The same principles are applicable to a partnership like that at bar. The circumstance that the legal title to the partnership property is vested in trustees instead of in all the partners can make no difference in this particular with partnership rights or partnership obligations. The trustees of course act in a fiduciary character toward all the partners. But they cannot be authorized by vote of a majority of the shareholders to make a conveyance to such shareholders against the protest of the minority. The relation established by the declaration of trust is a partnership notwithstanding the device of trustees to hold the legal title and of shares to represent the ownership of fractional parts of the property. If it had been the purpose and intent of the parties to permit a majority of the shareholders to compel a sale of the property to themselves, it would have been simple to insert a paragraph to that effect in the declaration of trust. See *Denholm* v. *McKay,* 148 Mass. 434.

Since this is a partnership the case at bar is distinguishable

from cases where sales are made by a corporation by vote of its stockholders to directors. The corporation is a legal entity separate and distinct from its stockholders. Commonly the stockholders of a corporation occupy no fiduciary relation to their fellow stockholders or to the corporation. The relation of a director to a corporation is fiduciary; yet transactions made in good faith, fair and for the interest of a corporation between it and its directors although scrutinized with great strictness may be authorized or ratified by vote of the stockholders under appropriate conditions. *Nye* v. *Storer,* 168 Mass. 53. *North-West Transportation Co. Ltd.* v. *Beatty,* 12 App. Cas. 589. *Merriman* v. *National Zinc Corp.* 12 Buch. 493, 500. *Bjorngaard* v. *Goodhue County Bank,* 49 Minn. 483, 487.

It follows that the twenty-first request of the plaintiffs for a ruling to the effect that the majority shareholders could not cause to be sold all or substantially all the assets of the trust to themselves against the expressed dissent of the minority ought to have been granted.

It is unnecessary to consider the other questions presented on the record.

*Exceptions sustained.*