Black, J.
This is an action brought on July 24,1980, by Rufus F. Walker, as owner of a certain parcel of land located on Main Street, Route 28, South Harwich, Barnstable County, Massachusetts under G. L. c.40A, § 17, seekingjudicial review of adecision by the Harwich Zoning Board of Appeals in which the plaintiff alleges to be an aggrieved party due to the granting of a special permit to the defendants, George B. Nelson and Ruth C. Nelson, for a change of a non-conforming use of a motel to a residential time sharing condominium and for certain structural alterations to accommodate the proposed use. An answer was duly filed by the defendants, George B. Nelson and Ruth C. Nelson, denying most of the essential allegations of the complaint and specifically asserting that the plaintiff was not a person aggrieved under the provisions of G. L. c.40A, § 17. The Board of Appeals did not file an answer or other responsive pleading and did not participate in the’judicial review proceedings before the court.
Thereafter the court allowed the plaintiffs Motion For Leave To Amend Complaint so as to name the plaintiff as Trustee of the Walker Trust rather than individually. The defendants, George B. Nelson and Ruth C. Nelson, filed an Answer To The Amended Complaint, setting forth the same answers as in their original Answer and specifically pleading lack of standing on the part of the plaintiff, Rufus F. Walker, Trustee. The case was presented to the court on the basis of a Stipulation with certain exhibits annexed. The court also heard from a defense witness who testified, in substance, that the proposed change would not adversely affect property values in the area. Further testimony was received from the defendant, Ruth C. Nelson, who stated that she and her husband had owned the motel property since 1959 when it consisted of sixteen (16) units, that twenty (20) additional units were added in 1965 and that some of the units have kitchen facilities. There are plans to add seven (7) more units for a total of forty-three (43). The units would be sold as time sharing condominiums wherein fifty (50) weekly intervals of each unit would be sold. The time sharing would exclude the first two weeks in January of each year. The court took a view of the locus.
The court found that the premises in question are operated by the Nelsons as a motel in a residential district (C-H-l) and that this is a valid non-conforming use, having been operated since 1959. prior to the date of the present Zoning By-Law. Eighteen (18) of the motel units have kitchen facilities and the court found that the installation of additional *85 kitchen facilities and the other changes contemplated in the units would not adversely affect the neighborhood and would not be substantially more detrimental to it than the existing non-conforming use. Similarly, the court found that an addition of seven additional units as time sharing condominiums would not be substantially more detrimental to the neighborhood and would not adversely affect the public good.
The court further found that the requested Special Permit was properly applied for and properly granted under Section XJ of the Town of Harwich Zoning By-Law. Section XG, which gives the Planning Board authority to issue permits for hotels, motels, and multi-unit dwellings, was determined to be inapplicable to applications for permission to alter or change non-conforming uses. The decision of the Board of Appeals was found legally adequate and the Board’s exercise of its discretion to issue the permit in this case was found to be within its authority and not to have been exercised in an arbitrary or capricious manner. No variance was found to be required in order to effect the change of use from a motel to time sharing condominiums since the structural changes contemplated would, for the most part, be internal to the existing structure of a nonconforming use, and the external changes would largely be of a sort normally associated with an accessory use for a motel, such as a putting green and an enclosure for an existing swimming pool, and would not appear to offend set-back or other requirements of the Zoning By-Law. Moreover, the possible expansion from seasonal to virtually year-round occupancy or use of the property as a non-conforming use would not necessarily preclude the grant of the special permit sought (McAleer v. Board of Appeals of Barnstable, 361 Mass. 317, 323-324 [1972]). The court found no local policy directed against condominium conversion of pre-existing and established uses, unlike the by-law involved in Goldman v. Dennis, 375 Mass. 197 (1978).
Accordingly, the court affirmed the decision of the Board of Appeals without modification on December 3, 1980. The plaintiff duly requested a report on December 11, 1980, and filed his draft report on the same date. The defendants, George B. Nelson and Ruth C. Nelson, claiming to be aggrieved by the court’s finding and ruling that the plaintiff was an aggrieved person within the meaning of the statute, filed their draft report on December 12, 1980. The draft reports were approved on January 30, 1981. Both the plaintiff and the defendants sought review of the case by the Appellate Division, but the trial judge reached the tentative conclusion that further review, after disposition in the District Court Department, would be by the Appeals Court, not the Appellate Division. The court, being in doubt as to the correct avenue for further judicial review, voluntarily reported the question of jurisdiction to the Appellate Division along with the other matters raised by the plaintiff and the defendants.
There are three issues presented by this appeal: (1) Does the Appellate Division have jurisdiction to hear this appeal? (2) Does the plaintiff have standing to maintain this action? (3) Was the trial judge correct on his rulings on the merits?

APPELLATE DIVISION JURISDICTION

The jurisdiction of the Appellate Division to hear zoning appeals is apparently a question of first impression. Under G. L. C.40A, § 17, as amended by St. 1978, c.468, § 32, there is concurrent jurisdiction in the District and Superior Court Departments to hear zoning cases. (It should be noted, however, that in Hampden County jurisdiction is shared only by the Superior and Housing Court Departments.)
The statute further provides: “If said appeal is made to said division of the district court department, any party shall have the right to file a claim for trial of said appeal in the superior court department within twenty-five days after service on the appeal is completed....”
There is no longer a method of appealing to the Superior Court Department for a trial de novo under G. L. C.40A, § 17. The provision appearing in St. 1973, c.1114, § 4, which specifically allowed such review, no longer appears in the act, and the removal *86 statute, G. L. c.231, § 97, is inapplicable because the action does not have to be brought in the District Court Department. See Gentile v. Rent Control Board, of Somerville, 365 Mass. 343, 346 n. 3 (1974); Forsberg v. Nickerson, Mass.App.Div.Ad.Sh. (1978) 46, 49; PERLIN AND CONNORS, HANDBOOK OF CIVIL PROCEDURE IN THE MASSACHUSETTS DISTRICT COURTS 237 (1980).
Where there is concurrent jurisdiction and no right of appeal to a trial de novo in the Superior Court Department, the normal method of review is by a Report to the Appellate Division. It is here, however, that the problem arises. The source of the uncertainty is the last sentence of G. L. C.40A, § 17, par. 2, which states in relevant part that “.. .the parties shall have all rights of appeal and exception as in other equity cases. ’ ’ Therefore, the issue hinges on what the General Court intended when it enacted these words.
A review of the statutory history reveals that the language comes originally from G. L. (Ter. Ed.) c.40, § 30, as amended by St. 1933, c.629, § 1, which completely changed the then existing procedure and provided for appeal to the Superior Court, sitting in equity. The only prior remedy had been by writ of certiorari, a proceeding in which only errors of law apparent on the record could be remedied. Lambert v. Board of Appeals of Lowell, 295 Mass. 224, 225, 227 (1936).
Subsequently, the District Courts were given jurisdiction, concurrent with the Superior Court, under the then c.40A, § 21, as amended by St. 1969, c.706. Appeal from the District Courts was by trial de novo in the Superior Court. Review of preliminary rulings was available in the Appellate Division. Forsberg v. Nickerson, supra, at 47-49. It must be noted that G. L. c.40A, § 21, as amended by St. 1973, c. 1114, § 4, provided that “ .. .the parties shall have all rights of appeal as in other cases.”
The District Courts’ jurisdiction in this area was abolished by St. 1975, c.808, § 3. This same act reintroduced the words, “ .. .the parties shall have all rights of appeal and exception as in other equity cases. ” The language is remarkable because the Rules of Civil Procedure, which abolished exceptions (Mass. R. Civ. P. Rule 46) and merged law and equity (Mass. R.Civ. P. Rule 2), took effect in 1974.
The statute now in effect, G. L. C.40A, § 17, as amended by St. 1978, c.478, § 32, restored jurisdiction to the District Court Department, concurrent with the Superior Court Department. As noted above, there is no longer any provision for further appeal by a trial de novo in the Superior Court Department. However, the statute retains the provision for “appeal and exception as in other equity cases” that was reinstated by St. 1975, c.808, § 3.
The problem foreseen by the trial judge is that the method of review apparently contemplated by the statute is not traditionally performed by the Appellate Division.
Undercurrent practice, appellate review is available by appeal and report. “Appeal” includes all pre-existing procedures. Under the former practice, review was by appeal, exceptions, or report. NOLAN, CIVIL PRACTICE § 951 at 232 (1975). Compare Mass. R. App. P. Rule 1(c)
“[T]he nature of the review by the Appellate Division resembles that of the Supreme Judicial Court formally in actions at law upon bills of exceptions. The analogy is made more perfect by the statute [G. L. c.231,§ 110, as amended by St. 1973, c.1114, § 198] which confers upon the Appellate Division substantially all the powers which the Supreme Judicial Court has in civil nonjury cases.” NOLAN, supra, § 966 at 259 (footnotes omitted).
The Appellate Division can review only rulings of law, not questions involving findings of fact, unless such findings involve errors of law or are plainly wrong. Id. at 259-261. Zaleski v. Zaleski, 330 Mass. 132, 134 (1953). See,e.g., T.L. Edwards, Inc. v. Fields, 57 Mass. App. Dec. 22, 24-25 (1975), aff'd. 371 Mass. 895 (1976). See generally NOLAN, supra, § 966 at 259-262, and cases cited therein.
*87 Under the peculiar Massachusetts chancery practice, a party could seek review in equity by a bill of exceptions. Flint v. Codman, 247 Mass. 463, 468 (1924). See generally REED, EQUITY PLEADING AND PRACTICE §§ 891-897 (1952). The common method of review of errors of law in equity cases was by way of ‘ ‘appeal. ” Id. § 1101 at 373. The scope of such review depended on the state of the record before the court. See Id. §§ 1101-1106. “The full court, in proper cases [i.e. where there was a complete record], upon appeal may review all questions of law, fact or discretion." Id., § 1102 at 374 (footnote omitted). See, e.g., Sullivan v. Board of Appeals of Belmont, 346 Mass. 81, 82 (1963). Where the record contains all the evidence, the entire case is presented for review, not merely the narrow questions of law. REED, supra, § 1106 at 379.
The word “appeal” seems to be used in three senses. There is the technical meaning of “appeal,” as defined in Mass. R. app. P. Rule 1(c); the technical meaning of an “appeal” in equity under the former practice; and the generic meaning “appeal,” i.e. review by a higher court. Strictly speaking, there is no “appeal” to the Appellate Division. Review is sought by report.
G. L. c.231, § 108, as amended by St. 1978, c.478, § 264, establishes the Appellate Division “for the rehearing of matters of law arising in civil cases therein [i.e. in the District courts] and in claims for compensation of victims of violent crimes.” Unfortunately, this statute was not amended to give the Appellate Division clear authority to hear zoning appeals when jurisdiction under C.40A, § 17, was restored to the District Courts by St. 1978, c.478, § 32. Consequently, the question remains what the Legislature meant by “appeal” in G. L. C.40A, § 17, par. 2.
A review of case authorities discloses three cases reported in the Appellate Division in which zoning matters have been considered.
In Tamburino v. Berardi, 49 Mass. App. Dec. 190 (1972), the court was faced with the question whether the District Courts had jurisdiction to act upon a petition for reveiw from the denial of a special permit by the Woburn City Council acting under the provisions of G. L. C.40A, § 21, as amended by St. 1969, c.706. At the relevant time c. 40A, § 21, provided for concurrent jurisdiction in the District and Superior Courts. The respondents’ plea in abatement was allowed. The Appellate Division overruled the plea and remanded the case for hearing in accordance with the statute because the District Courts did have jurisdiction thereunder. The issue of the Appellate Division’s jurisdiction was not raised.
The second case is Forsberg v. Nickerson, supra, in which the issue of the Appellate Division’s jurisdiction to hear an appeal under G. L. c.40A, § 21, as amended by St. 1973, c. 1114, § 4, was squarely raised. The trial judge had dismissed the petition for review because the filing was not timely and reported the question of the Appellate Division’s jurisdiction without ruling on it. The respondents’ position was that under both G. L. c.40A, § 21, and G. L. c.231, § 97, direct appeal to the Superior Court was the exclusive remedy. Since there was concurrent jurisdiction, c. 231, § 97, did not apply. Furthermore, the court concluded that there was nothing in the language of c.40A, § 21, par. 2 (“[A]ny person aggrieved by the decision of the board of appeals or of the district court ... may appeal to the superior court....”), which prevented this unusual situation, i.e. an option of an appeal to the Superior Court or to the Appellate Division from a preliminary ruling by a District Court in a zoning case. Mass. App. Div. Adv. Sh. (1978) at 49. Therefore, the court held that the Appellate Division had jurisdiction.
The third case is Charest v. Manchester, Mass. App. Div. Adv. Sh. (1978) 52, decided a week after Forsberg by this District of the Appellate Division. The defendants’ motions to dismiss on the ground of lack of jurisdiction were allowed by the trial court. The plaintiff contended that G. L. c.40A § 21, was still in effect. The *88 Appellate Division ruled, however, that the new c.40A, § 17, St. 1975, c.808, which abolished District Court jurisdiction, was then in effect and found no error. The question of the Appellate Division’s jurisdiction was not raised.
A case which, along with Tamburino, was cited by the Forsberg court to support its jurisdiction over zoning cases is Planning Board of Taunton v. Zoning Board of Appeals of Taunton, 5 Mass. App. Ct. 770 (1977). This was also brought under c. 40A, § 21, as amended by St. 1973, c. 1114, § 4. The District Court judge sustained the defendants’ answer in abatement and dismissed the case on the grounds that the plaintiffs were not “aggrieved” persons within the meaning of Zoning Enabling Act. The plaintiffs filed a bill in equity in the Superior Court which was dismissed for lack of jurisdiction because the sustaining of the plea of abatement was not a “decision” from which an appeal would lie. The Appeals Court held that a dismissal for lack of standing was as much a “decision” as any ruling on the merits and that the Superior Court had jurisdiction to hear the matter. The judgment was reversed, and the case was remanded to the Superior Court. The Forsberg court cited the case because “the court did not rule that C.40A, § 21, conferred exclusive jurisdiction over such appeals in the Superior Court. ’ ’ Forsberg v. Nickerson, supra, at 49. That question does not appear to have been before the Appeals Court, however, and there is nothing in the one-paragraph rescript opinion to suggest that the issue of the Appellate Division’s jurisdiction was even considered. The sole issue before the Appeals Court was ‘ ‘whether the Superior Court properly dismissed the plaintiffs’ bill for lack of jurisdiction.” 5 Mass. App. Ct. at 770.
All three of these cases were decided in the District Court on a preliminary ruling: Tamburino on a plea in abatement, Forsberg on a dismissal for late filing, Charest on a motion to dismiss for lack of jurisdiction. None of them was decided on the merits. The Forsberg court specifically spoke of “this unusual situation which allowed an option of appeal to the Superior Court or to the Appellate Division from a preliminary ruling by a District Court in a zoning case.” Mass. App. Div. Adv. Sh. (1978) at 49 (emphasis added). Furthermore, the version of the statute in Forsberg and Charest did not include the “equity appeals” language.
Therefore, none of these cases is necessarily a precedent on the question before the court in the instant case, which was decided on the merits under C.40A, § 17.
Quite apart from the zoning cases, there are numerous cases which address the issue of the Appellate Division’s jurisdiction. One such case is Deely v. Boston Redevelopment Authority, 1980 Mass. App. Div. 101, 1 Mass. Supp. 604, which was recently decided by this District. In that case, we extensively reviewed the case authorities and concluded that the Appellate Division lacked subject matter jurisdiction to review petitions under G. L. c.32, § 16(3)(a), because the statute itself indicated that the decision of the District Court on such a petition for review was final and no explicit provision was made for further review. In reaching this conclusion, we analyzed several cases bearing on the issue of the Appellate Division’s jurisdiction. It was noted that in Stow v. Libby, 18 Mass. App. Dec. 188 (1960), the Appellate Division had concluded that it lacked jurisdiction to reveiw a petition under G. L. c.l 17, § 7, to compel support by certain kindred of an indigent parent. The court pointed out that although G. L. c.218, § 108, when read literally, would seem to imply that any ruling of law made in a District Court in a case of a civil nature is reviewable by the Appellate Division, it has long been held that review by the Appellate Division is generally restricted to those cases in which the plaintiff has an election to bring the action in the District or the Superior Court Department. Where the plaintiff is compelled to bring the action in a District Court it has generally been held, absent a clearly expressed legislative intent to the contrary, that the Appellate Division does not have jurisdiction to review errors of law. (See Donnelly v. *89 Montague, 305 Mass. 14, 17-18 [1940].)
This court also noted that in the area of administrative law further review by the
Appellate Division of petitions for review has not been favored, absent an unambiguous legislative intent to the contrary. In this connection, we might point out that the Supreme Judicial Court has said that a zoning board of appeals is an administrative or quasi-judicial tribunal (see Lambert v. Board of Appeals of Lowell, supra, at 228). This court went on to cite various examples of cases where a determination had been made that the Appellate Division lacked jurisdiction (see Sinclair v. Director of Division of Employment Security, 8 Mass. App. Dec. 13 [1954], Zahansky v. Shea, 54 Mass. App. Dec. 51 [1974], and Black v. Zuler, 48 Mass. App. Dec. 156 [1971]).
Because of the numerous changes in the zoning laws, which have at various times conferred jurisdiction upon the District Courts, sometimes subject to a de novo review in the Superior Court, and on other occasions removed jurisdiction from the District Courts entirely, we conclude that the present arrangement allowing zoning appeals to be brought in either the Superior Court or the District Courts, subject to the right of removal to the Superior Court, but with no right of appeal for a trial de novo in the Superior Court, presents a unique situation as regards jurisdiction over appeals when the case is heard in a District Court. Therefore, we do no consider Deely v. Boston Redevelopment Authority, supra, or the various cases cited therein, as necessarily dispositive of the issue in this case.
There are five possible avenues of appeal from a decision of a District Court in a zoning case: (1) trial de novo in the Superior Court; (2) the Appeals Court; (3) an action in the nature of certiorari under G. L. c.249, § 4; (4) the Appellate Division; and (5) direct appeal to the Supreme Judicial Court.
Clearly, there is no longer a trial de novo available under the current language of G. L. c.40A, § 17. The jurisdiction of the Appeals Court is expressly limited by G. L. c.211 A, § 10, to appeals from the District Courts “injury sessions.” As we perceive it, the only way the Appeals Court could acquire jurisdiction is by transfer from the Supreme Judicial Court under the provisions of G. L. c.211 A, § 12. The third possible avenue of appellate review would be an action in the nature of certiorari to the Supreme Judicial Court. However, this avenue is not available if the proceedings are “otherwise reviewable by motion or by appeal.” (See G. L. c. 249, § 4). More Importantly, if the only manner of appeal were to the Supreme Judicial Court, either by an action in the nature of certiorari or by direct appeal (G. L. c.211 A, § 10) the intent behind G. L. C.40A, § 17, par. 6, that “[a]ll issues in any proceedings under this section shall have precedence over all other civil actions and proceedings’ ’ would be frustrated. By process of elimination, therefore, we conclude that the legislature must have intended that appeals from reviews by the District Court would be heard by the Appellate Division. We believe, however, that there are other compelling reasons for this conclusion.
The Appellate Division is the customary forum for all appeals from the District Court with the exception of those cases that can be tried de novo in the Superior Court, or those that, as jury cases are appealable to the Appeals Court. Since neither of these avenues is open in zoning cases, it seems logical to conclude that such appeals should be handled by the Appellate Division. We recognize that the jurisdiction of the Appellate Division is established by G. L. c. 231, § 108, as amended by St. 1978, c.478, § 264, and that the authority conferred is to rehear “matters of law arising in civil cases therein and in claims for compensation of victims of violent crimes. ’ ’ The plaintiff contends that such jurisdiction is found in the term ‘ ‘civil cases” used in the first sentence of that statute and that this terminaology is broad enough to cover zoning appeals. We would point out that the term “civil cases” should not be confused with “civil actions.”
*90 Additionally, the merger of law and equity effected by the Rules of Procedure is strictly procedural, not substantive, and the equity jurisdiction of the District Court Department is not expanded thereby. See Reporter’s Notes to Mass. R. Civ. P. Rule 2; Comments to Dist./Mun. Cts. R. Civ. P. Rule2. In this connection, G. L. c.218, § 19C, confers equity jurisdiction upon the District Courts in only a specific number of instances. It is not a general grant of equity jurisdiction. Actions under G. L. c.40A, § 17, are clearly equitable in character. In conclusion, therefore, any decision regarding the forum for the hearing of zoning appeals cannot be predicated upon a literal reading of the various statutes bearing upon the jurisdiction of the District Court, but rather upon a careful consideration of the alternatives available. In light of the totality of the circumstances, we can only conclude that when the legislature conferred jurisdiction upon the District Court Department to hear zoning cases it must have also intended that the Appellate Division would hear appeals from decisions of the District Courts in such matters.

PLAINTIFFS STANDING

The defendants by way of affirmative defense raised the issue of the plaintiffs standing, i.e. whether or not he was a “person aggrieved” within the meaning of G. L. c.40A, § 17. The court found and ruled that the plaintiff had met the criteria for a “person aggrieved.’’FINDINGS, RULINGS, AND ORDER FOR JUDGMENT, No. 6 hereinafter cited as “FINDINGS”.
Standing in zoning cases has been discussed in several recent opinions.
We said in Waltham Motor Inn, Inc. v. LaCava, 3 Mass. App. Ct. 210, 215-216 (1975), that the presumption that the owner of property nearby to the subject of an application for a variance, who receives notice of that application, is a person aggrieved recedes if the issue is contested. Once the plaintiffs’ status as aggrieved persons was challenged, the question of standing ‘was to be determined on all the evidence with no benefit ... from the presumption as such Marotta v. Board of Appeals of Revere, 366 Mass. 199, 204 (1957). Waltham Motor Inn, Inc. v. LaCava, supra, at 217. Redstone v. Board of Appeals of Chelmsford, Mass. App. Ct. Adv. Sh. (1981) 351, 352-353.
The defendants’ position is that the plaintiff’s standing was contested when the question was raised in the pleadings and that the only evidence disclosed by the Report relative to the issue was the testimony of the defense witness who offered the opinion that the conversion of the motel property would not affect the values of the surrounding property adversely. Since the plaintiff lost the benefit of the presumption and the only evidence on the issue disclosed by the Report indicates that the plaintiff was not a person aggrieved under the Waltham Motor Inn criteria, the complaint should have been dismissed.
The plaintiffs answer is that as an owner of nearby land and a “party in interest” to whom notice had to be sent under G. L. C.40A, § 11, he is presumed to be a person aggrieved. Even though the presumption disappeared when contested, the evidence in the case remains visible. This evidence is the proximity of the plaintiffs property to the defendants’ (see Exhibits B and C attached to the Stipulation); the explanation of his objections given to the court; and the view taken by the judge, from which he was free to draw reasonable inferences. The court’s finding is not to be disturbed unless plainly wrong, particularly since the question of standing calls for the exercise of discretion (Rafferty v. Sancta Maria Hosp., 5 Mass. App. Ct. 624, 629 ] 1977]).
The Report states that the case was presented on the basis, inter alia, of a “stipulation with certain exhibits which are annexed hereto....,” and “a stipulation of fact con *91 taining certain exhibits.” FINDINGS at 2. The judge “expressly adoptjed] the stipulation entered into by the parties and incorporate^] the same in ]his] findings. ” Id, No. 7, Stipulation No. 4 states in substance that the Board of Appeals held a hearing at which it granted the defendants’ request for relief. A copy of the Minutes of this hearing was attached to the Stipulation as Exhibit D.
Paragraph 9 of the Minutes states: “Mr. Rufus Walker, an abutter, spoke in opposition and stated he felt this would result in a deeding of as many as 200 additional deeds to this property which would result in an increased traffic flow with people from all parts of the world and the U.S. belonging to this reciprocal arrangement. He felt this was a tremendous change from the present By-Laws and was a giant step away from zoning laws. ’ ’ Even though this is hearsay, it was submitted to the court as part of a Stipulation by both parties upon which the case was presented to the court. We infer that the plaintiff is a residential owner based on (1) the character of the district, and (2) the lack of any indication by the court or the defendants that the plaintiff was motivated by business reasons. It might be inferred from FINDINGS Nos. 1,2, and 3 that the plaintiffs interest was something to do with protecting the residential character of the neighborhood.
A somewhat analogous situation occurred in Marotta, supra. There the parties agreed that the decision of the board of appeals could be offered in evidence. The trial judge adopted the decision. 336 Mass, at 200-201. Because it was not clear that the decision was admitted for all purposes (although it could have been), the court on appeal could not rule that there had been the requisite independent determination of facts. Id. at 201-202. The trial judge did take a view of the locus. He stated: “From a view of the locus and surrounding areas: Paragraph] I therefore adopt the decision of the board of appeal...." Id., at 201. The court “counstrue]d] what the judge said in respect of the view taken by him to state that the observation which the view afforded confirmed to him the correctness of the facts set forth in the decision of the board. We do not understand the judge to state that the view gave him knowledge of new facts which, not being expressed by the judge, could, for all that appears, support the decree.” Id., at 202.
The situation in this case is different. We do have an independent determination of facts, based in part on the Stipulation of both parties to which the Minutes were annexed as an exhibit. The difficulty in Marotta arose because the decision of the board (which would have been “necessary evidence to permit the judge to perform his function on appeal”) was introduced, and it was not clear that the parties intended to stipulate that the facts found by the board should be deemed the facts for purposes of appeal. Id., at 201.
Predicated upon our review of the report in this case, we conclude that the trial judge’s finding that the plaintiff is an aggrieved person so as to afford him standing is clearly supported by the evidence and the reasonable inferences that may be drawn therefrom. Certainly, we cannot say that it is plainly wrong or clearly erroneous.

THE MERITS

The critical issue is whether the applicable provision of Section X of the Harwich Zoning By-Law is subsection J or G. The defendants say that Section X-G does not apply; the plaintiff says it does. The court agreed with the defendants: “1 find and rule that the requested special permit was properly applied for and properly granted under Section XJ of the Harwich Zoning By-Laws. Section XG which gives the Planning Board authority to issue permits for hotels, motels and multi-unit dwellings is not applicable to applications for permission to alter or change non-conforming uses.” FINDINGS No. 4.
*92 The essence of the plaintiffs argument is that Section X-G, which provides that “]t]he Planning Board shall have authority to hear and decide applications for special permits for multi-family, hotel or motel uses,” establishes a small class of special permits which is set aside for distinct treatment. The property in question is now being used as a motel, as defined in the By-law. The proposed use of the premises is for efficiency units (motel units equipped with cooking and sanitary facilities) sold as condominiums, which must be deemed to be multi-family units. The owner of a motel who wants to convert it to something else and the owner of other property who wants to convert it to a multi-family dwelling must apply for a special permit under subsection G, and the language of subsection G allows no exceptions for any sort of special permit needed for multi-family, hotel, or motel uses. It excepts all other special permits needed under the By-Law, applications for which shall be heard by the Board of Appeals.
On the other hand, the defendants contend that as a general rule of statutory construction a legislative enactment must be construed as a whole, with effect given to all of its provisions so far as possible. The relevant language of subsection G must be construed in conjunction with the remaining language of subsection G and the other provisions of the By-Law in the light of the statutory scheme of G. L. C.40A. So construed, the language was intended to give the Planning Board jurisdiction over applications for the creation of new multi-family, hotel, and motel uses; it was not intended to apply to applications for permission to change pre-existing non-conforming uses.
We agree with the defendants, as did the trial court. If the Planning Board had exclusive or concurrent jurisdiction over all applications concerning requests for multi-family, hotel, and motel uses, the owners of land devoted to pre-existing nonconforming uses in various districts would be unable to obtain permission to change those uses to a multi-family, hotel, or motel use since those uses are not listed in ‘ ‘Table 1. Use Regulations” of the By-Law as uses permitted upon the granting of a special permit in those districts. G. L. C.40A, § 6, par. 1, as amended by St. 1979, c.106, specifically provides in relevant part: “Pre-existing nonconforming structures or uses may be extended or altered, provided ... [the relevant authority finds] that such change, extension or alteration shall not be substantially more detrimental than the existing nonconforming use to the neighborhood.” Nothing in the statute authorizes a municipality to limit the right to change pre-existing non-conforming uses by adopting exceptions to § 6.
If the Planning Board had exclusive jurisdiction, it could grant a special permit, should it find that the criteria of subsection G(l) (a-c) of the By-law were met, without making specific finding required by G. L. c.40A, § 6. Were the Planning Board to have concurrent jurisdiction, the applicant would have to meet criteria other than what is explicitly set forth in G. L. C.40A, § 6.
Subsection G(2) of the By-law makes specific reference to c. 40A, § 9, the second paragraph of which deals with special permits to increase the density of population. Section 9 refers to the granting of special permits in general, § 6 deals with existing structures.
Also, subsection G(2) speaks of “ ... an application for special permit to construct multi-family dwellings, hotels or motels_” (Emphasis added). The use of the verb “construct” alone, rather than “construct, change, extend, or alter” or something similar, implies that new structures are contemplated. Compare Section IV-B where it is stated that the provisions of the By-Laws “shall apply to the erection, construction, reconstruction, alteration or use....” Even more significant is the definition in Section II:
*93 SPECIAL PERMIT GRANTING AUTHORITY: The Planning Board established pursuant to General Laws, Chapter 41, Section 81A shall be the Special Permit Granting Authority in any case where this By-Law requires such permit to erect multi-family dwellings, motels or hotels. The Board of Appeals established hereunder shall be the Special permit Granting Authority for all other such permits provided for herein (Emphasis added).
The second major issue on the merits is whether or not the defendants had to obtain a variance. The court found and ruled that‘ ‘no variance ] was] required to effect the change of use from a motel to a time sharing condominium.” FINDINGS No. 8. It is necessary to determine, first, if there was a ‘ ‘change of use, ’ ’ and, if so, what the effect thereof is.
Under the By-Law, the distinction between motel units and multi-family dwelling units is that the latter have cooking facilities (see definitions - Section II). The defendants intend to install cooking facilities in the motel units (FINDINGS at 2-3), thereby qualifying them as dwelling units and the entire structure as a multi-family dwelling unit. The defendants argue that the mere vesting of ownership in the families who would be occupying the motel anyway is not enough to change the nature of the use of the property from a motel to a multi-family dwelling.
We note that “use” per se is not defined in Section II of the By-Law. There is, however, the following definition:
USE, PRINCIPAL: The main or primary purpose for which a structure or lot is designed, arranged, or intended, or for which it may be used, occupied or maintained under this By-Law.”
The case of Goldman v. Dennis, 375 Mass. 197 (1978), has an important bearing on this issue, as acknowledged by both parties to this action, although they disagree about what the holding of Goldman is and how far it may be extended.
In that case, the zoning by-law of the town of Dennis prohibited the conversion of any non-conforming “cottage colony” to single-family use under condominium type ownership unless the lot met certain minimum requirements. The plaintiff-owner challenged the regulation on the grounds, inter alia, that the regulation related to the form of ownership, not to the “use” of land, and therefore was not authorized by G. L. c.40A, as in effect prior to January 1, 1976. The court stated that:
The legislative body of the town could reasonably believe that conversion of a cottage colony to single family use under condominium type ownership would encourage expansion of use beyond the short summer season. In McAleer v. Board of Appeals of Barnstable, 361 Mass. 317, 323 (1972), we recognized that a town could inhibit ‘expansion of a nonconforming use from seasonal to a year-round basis,’ although we found the by-law there in question to be broad enough to permit the increase. See Berliner v. Feldman, 363 Mass. 767, 776-777 (1973); Morin v. Board of Appeals of Leominster, 352 Mass. 620, 623-624 (1967). Here the by-law is explicit in its limitation of the expansion of a nonconforming use. Although the limitation is phrased in terms of the type of ownership, we think it is valid as a regulation of ‘change of use.’ See Powers v. Building Inspector of Barnstable, 363 Mass. 648, 652-658 (1973). Cf. Norsco Enterprises, v. Fremont, 54 Cal. App. 3d 488, 498 (1976) (condominium developments present special land use problems). Goldman, supra, at 199.
Some idea of what the court held in Goldman may be gleaned from a statement it made in Grace v. Brookline, Mass. Adv. Sh. (1979) 2257:
*94 The plaintiffs assert that in a number of cases from other jurisdictions, purportedly cited with approval in Goldman v. Dennis ..., courts have held that ‘[planning controls ... cannot be employed by a municipality to exclude condominiums or discriminate against the condominium form of ownership, for it is use rather than form of ownership that is the proper concern and focus of zoning and planning regulation.’ Maplewood Village Tenants Ass’n. v. Maplewood Village, 116 N.J. Super. 372, 377 (Ch. Div. 1971). See Miami Beach v. Arlen King Cole Condominium Ass’n., 302 So. 3d [stc] 777 (Fla.Dist.Ct.App. 1974).
Contrary to the plaintiffs’ interpretation of Goldman, that case neither approves nor disapproves of the reasoning of cases like Maplewood Village Tenants Ass'n. Those cases were cited [375 Mass, at 200] simply as inapposite to the matter then before us.... [E]ach held that under the applicable zoning enabling acts, regulation based on the form of ownership was unauthorized. Mass. Adv. Sh. (1979) at 2274-2275.
The defendants argue that Goldman does not alter the fact that a creation of a condominium of property is only a change in the form of ownership; that the case merely stands for the proposition that a municipality may, under certain circumstances, exercise its zoning power to regulate the creation of a condominium; and that even if the holding could be extended to serve as the basis of a ruling that the creation of a condominium in all cases constitutes a change of use, there is not even the slightest hint that the resulting use would be a multi-family dwelling use.
From our reading of the Goldman case, we reach the same conclusion. The court did not say that condominium type ownership was a “ use”; it said that the specific limitation in question was “valid as a regulation of ‘change in use.’” 375 Mass, at 199. The “use” in Goldman was a seasonal use, and the change of use was as defined in G. L. C.40A, § 5, as amended through St. 1969, c.572. Therefore, we conclude that Goldman is not controlling in this case, one way or another.
Nevertheless, under the definitions contained in Section II of the By-Law, the installation of cooking facilities in motel units qualified them as dwelling units and made the entire structure a multi-family dwelling. The court implicitly reached the same conclusion. There was, therefore, a change of use from a motel to a multi-family dwelling. (FINDINGS No. 8).
Even if the conversion to condominium ownership did not constitute a multi-family use, argue the defendants, a variance was still not required. We note that the power of the Board of Appeals under Section X-J to permit the change of a non-conforming use extends to more than the uses permitted as of right in the district where the nonconforming use is situated. An owner could, as a matter of right, convert a nonconforming use to a use otherwise permitted. If the Board’s power extends only to permitting changes to uses permitted as of right, the provisions of Section X-J would be rendered nugatory. It would also negate the provisions of c. 40A, § 6, which authorizes the permit granting authority to allow a change or alteration of a non-conforming use. If the change or alteration contemplated by § 6 is confined to permitted uses and if a variance is required in the case of a change or alteration to any use not otherwise permitted, § 6 would be meaningless: The jurisdiction conferred would never be necessary. A change to a permitted use would not require action; a change to a use permitted upon the granting of a special permit would be authorized by G. L. c.40A, § 9; a change to a use not otherwise permitted is governed by G. L. C.40A, § 10.
The relevant provisions of the statute are as follows:
*95 Pre-existing nonconforming structures or uses may be extended or altered, provided, that no such extension or alteration shall be permitted unless there is a finding by the permit granting authority or by the special permit granting authority designated by ordinance or by-law that such change, extension or alteration shall not be substantially more detrimental than the existing nonconforming use to the neighborhood. G. L. c.40A, § 6, par. 1, as amended by St. 1979, c.106.
Zoning ordinances or by-laws shall provide for specific types of uses which shall only be permitted in specified districts upon the issuance of a special permit. Special permits may be issued only for uses which are in harmony with the general purpose and intent of the ordinance or by-law, and shall be subject to general or specific provisions set forth therein.... G. L. C.40A, § 9, par. 1, as amended through St. 1977, c.829.
The permit granting authority shall have the power ... to grant ... a variance from the terms of the applicable zoning ordinance or by-law.... Except where local ordinances or by-laws shall expressly permit variances for use, no variance may authorize a use or activity not otherwise permitted in the district in which the land or structure is located.... G. L. c.40A, § 10, par. 1, as amended by St. 1977, c. 829, 4B.
Consequently, we think the defendants read G. L. c.40A, § 6, and Section X-J correctly. The restrictions of Section V apply “[ejxcept as provided by the Zoning Act or in this By-Law. ” Section 6 and Section X-J do so provide and, therefore, a variance was not required. The trial court apparently agreed. FINDINGS No. 8.
We next turn our attention to Section V-C of the By-Law. It provides in part that ‘ ‘changes or extensions of non-conforming uses on permit from the board shall comply with all applicable provisions of this By-Law not specifically and expressly varied by the Board.” The decision of the Board (Exhibit E to the Stipulation) does not specifically and expressly vary the terms of the by-law. Therefore, the defendants have to comply with all other regulations relating to the use of their building as a multi-family dwelling unit, and they must prove compliance with all zoning restrictions on such units.
There is nothing in the Report to indicate that the locus does not comply with the requirements of the By-Law. The court ruled that no variance was required (FINDINGS No. 8). The plaintiff made no request for a ruling to raise the question of law whether the finding was warranted by the evidence. See Massachusetts Gen' l Hosp. v. Quincy, 348 Mass. 791 (1965). Additionally, there was no finding that the locus failed to comply with the requirements of the By-Law, and there is no evidence in the Report which would have supported such a finding. To the contrary, the court stated that the external changes to the structure “would not appear to offend set-back or other requirements of the zoning by-law.” FINDINGS No. 9.
The plaintiff further contends that since there is no mention whatever of condominiums or time-sharing condominiums in the By-Law, such uses of property are utterly forbidden by Section V-A of the By-Law. Section V-A states in relevant part: “Any use not listed shall be construed to be prohibited.”
We do not read Section V-A as imposing an absolute prohibition on condominium conversion. In context, the section seems to refer to the Table of Use Regulations which follows it. According to Section V-B, there are three types of uses: (1) those permitted as of right, designated by (P) on the Table; (2) those permitted by special permit, designated by (S); and (3) uses that “shall not be permitted in the district,” designated by ( — ). Section V-A should be read in conjunction with subsections B and C. Because *96 subsection C allows “[ujses permitted by variance..or changes or extensions of / non-conforming uses on permit..we do not believe that the last sentence of subsection A can be read in vacuo as an absolute prohibition of condominium conversions. Moreover, the provisions of subsection A apply “[e]xcept as provided by'the Zoning Act [c.40A] or in this By-Law-” /
The plaintiffs brief raises a number of other miscellaneous issues which we find to be without merit and which do not require additional assessment.
Having concluded that this court has jurisdiction to hear this appeal, that there was no error in the trial court’s finding that the plaintiff has standing as a “person aggrieved” by the Board’s decision in this case, and that there was no error in the trial court’s findings on the merits, the Report is dismissed.

So ordered.